## SPENCER v. MINNICK.

No. 3193.   Opinion Filed December 20, 1913.

Rehearing Denied March 10, 1914.

(139 Pac. 130.)

1.  **LIBEL AND SLANDER—Pleading—Effect of Answer as Admission.**  When the answer of defendant in a libel suit admits the publication of the alleged libelous article, at the time and in the manner alleged, and avers in general terms for a defense, that the matters and things published were true, such answer has the effect of not only admitting the words used, but also admits their use with the meaning assigned to them by way of innuendo.

2.  **SAME—Defamatory Publication—Right of Recovery.**  In a suit based on several alleged libelous articles, when the defense is that the articles published are all true, the plaintiff is entitled to recover, unless the truth of every material item of the defamatory matter is established.

3.  **SAME—Libelous Character of Publication—Question of Law.**  Where the language of an alleged libel is clear and unambiguous, and the facts are uncontroverted with reference to whether or not the language used is libelous, or its publication privileged, on a trial the questions so presented are of law for the court to determine.

4.  **SAME—Liability—Defense.**  A man cannot libel another by the publication of language the meaning and damaging effect of which is clear to all men, and where the identity of the person meant cannot be doubted, and then escape liability through the use of a question mark.

5.  **SAME—Actionable Words.**  Words used in an alleged libelous article are to be taken in their most natural and obvious sense, and in which those to whom they are addressed will be sure to understand them.

6.  **SAME.**  Language used in a newspaper article, which, given its ordinary, natural, and obvious meaning, exposes the person concerning whom it is used to public hatred, contempt, ridicule, or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation, is libelous and actionable.

7.  **SAME—Mitigation of Damages—Evidence.**  It is competent, in a suit on a libelous article, to show that the publisher had been informed through what he considered reliable sources that the things stated in the article were true, and that he so believed them to be in making the publication; but such evidence can only be considered in mitigation of the libel for the purpose of reducing the damages.  It does not tend to prove justification.

(Syllabus by Brewer, C.)

*Error from District Court, Payne County;*
*A. H. Huston, Judge.*

Action by Wilbur Spencer against C. A. Minnick for libelous publication. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

*Eagleton, Biddison & Merritt,* for plaintiff in error.

*Freeman E. Miller,* for defendant in error.

Opinion by BREWER, C. This is a suit for libel based upon the publication in the Yale Record, a newspaper published in Payne county owned and controlled by the defendant in error, of three articles, which the plaintiff in error alleges were false, malicious, and intended to expose him to public hatred, contempt, ridicule, and obloquy, and intended to deprive him of public confidence and to damage him in his business.

The portions of the various articles are set out in the petition in so far as they are claimed, to be libelous; the first, and perhaps the most important of the three, being as follows:

"Having secured reliable information we applied direct to our city marshal to verify the facts, and he plainly informs us that he had been forbidden to interfere with the whisky traffic in Yale, (by whom?)

"By the Board of Trustees of Yale. He had to leave the traffic alone or lose his job. He has been carrying the burden of blame, instead of the real parties. Having learned those facts we thus publicly apologize to Mr. Byrum, for all the hard things we have published concerning him, in so far as this condition of things may relieve him of the responsibility. Mr. Watson informs us that he never concurred in the orders to Byrum and had no knowledge of them, hence the burden rests on the other two members of the old council.

"This also is additional proof of why the old members of the council were so determined to force Watson out of the board, as a man they could not bully into concurring with them in this line of business, hence was not wanted on the board by those worthies.

"Friends and citizens of Yale, what do you think of this situation? Who is the principal man responsible for this lawless condition? Almost every person in Yale believes that Wilbur Spencer is the dominating spirit of the old council. That Brock-

man is little more than a puppet in his hands. We have in the
past published the question! Why was the whisky traffic per-
mitted to flourish in Yale? Who was securing the rake off that
must be in circulation under the prevailing conditions? Why
were the old members so determined to force Watson out of the
board? What was the object sought in removing Watson? We
have never been able to secure a reply to any of those questions.
Under the light of our present knowledge, the public is free to
form their conclusions."

Another article complained of is headed "Church People
Attention" and the following language is set out:

"Many of you around Yale are personally familiar with his
well known principles of infidelity, possibly some of you have
heard him flatly deny the existence of God or any future state
of existence. The slush funds of the whisky trust is powerful,
therefore every man that has the honor of the district in view
or who favors honest, clean men for office, should personally use
every reasonable effort to defeat the nomination of Spencer at
the primaries."

Another article was headed "Renegade Socialist," which is
evidently of less importance than the other two, and which
amounted to the charge that the plaintiff had been a Socialist
and changed his political affiliations and became a Democrat in
the hope of gaining a political position.

After declaring on each of the articles as above stated, the
meaning of the several articles, as understood by plaintiff, is
set out in form of innuendoes, with prayer for damages, both
actual and punitive.

To the petition in the case the defendant answered, first,
by way of a general denial of all material matters stated in
the petition, except such as are afterwards admitted in the an-
swer. The defendant then admits the publication at the time
and in the manner alleged; and he alleges that the things so pub-
lished were published of the defendant and were true in substance
and in fact when published; that they were published for a good
purpose and without malice. The defendant further justified by
the allegation that the plaintiff was a public officer, and that the
statements were criticisms of official acts, and therefore privi-
leged, and that the facts so published were true. The plaintiff

demurred to the two paragraphs of the answer pleading justification, and, the same being overruled, filed a general denial for a reply. The case was tried to a jury, and a verdict found for the defendant.

The answer pleading the truth of the publication in justification, as may be observed, was general in its character. The pleader could have pleaded the truth of the words as published, and denied the meaning assigned in the innuendo; having, however, declared generally that the matters complained of were in fact true, it had the effect of admitting the words used with the meaning assigned to them in the petition.

In Newell on Slander and Libel (2d Ed.) p. 653, it is said:

"But when a libel is justified generally, the doctrine is well settled that, so far as the justification is concerned, it is justified as applied or explained by the innuendoes, and therefore there can be no justification made out by the evidence unless the facts are proven true as alleged in the declaration and with the meaning there averred, unless with the aid of the colloquium such meaning is repugnant."

—*Atkinson v. Detroit Free Press*, 46 Mich. 347, 9 N. W. 501, and cases cited. There is nothing in the colloquium repugnant to the meaning assigned.

Where the defense is the truth of the libelous publication, unless the truth of every material item of the defamatory matter is established, the plaintiff is entitled to recover damages on those not shown to be true. *Atkinson v. Detroit F. P.*, 46 Mich. 348, 9 N. W. 501.

The court left it to the jury to determine whether the publications admitted to have been made were actionable and constituted libel. This instruction is objected to, and in our judgment constitutes error.

In *Bodine v. Times Journal Pub. Co.*, 26 Okla. 135, 110 Pac. 1096, 31 L. R. A. (N. S.) 147, it is decided:

"Where the language of an alleged libel is clear and unambiguous, and the facts are uncontroverted with reference to whether or not it was libelous or its publication privileged, on a trial the questions so presented are of law for the court, and not of fact for the jury."

And in the course of that opinion the court says:

"The language used in this article was clear and unambiguous, and the facts in reference to the question of whether it was privileged were uncontradicted, and in such cases it is the duty of the court to determine the construction of the language, and whether it is privileged, as well as whether it is libelous and actionable *per se* (citing many cases)."

And so it is here. The language used in its ordinary meaning, to the mind and understanding of all people, tends to bring the person spoken of into disrepute; to excite public hatred, contempt, and obloquy. The words used in an article claimed to be libelous must be taken in their natural and obvious sense. *Hubbard v. Cowling*, 36 Okla. 603, 129 Pac. 714. Just as certainly would this language, if believed, tend to deprive the person mentioned of the public confidence and esteem, and thus to injure him in whatever business he was engaged. If so, it was libelous under the statute (section 4956, Rev. Laws 1910) and therefore actionable.

A man cannot libel another, by the publication of language, the meaning and damaging effect of which is clear to all men, and where the identity of the person meant cannot be doubted, and then escape liability through the use of a question mark.

Neither do the facts of this case render the contents of the first article set out herein privileged. The publication, in clear and unequivocal effect, charged this town trustee with criminal malfeasance in office. It was intended, partially by insinuation it is true, but just as certainly nevertheless, to convince the people of that community that this plaintiff had prevented the enforcement of the liquor law for a monetary consideration, that there had been a "rake off" in connection with this nonenforcement policy, and that the plaintiff got it. The publication was not privileged, under the facts shown, and the defendant had remaining to him but the defense of "truthful publication without malice" as a complete defense, and then, if this failed, the right to prove any circumstances tending to show good faith, clean purpose, and want of malice, in mitigation of the offense, to reduce the damages.

Inasmuch as this cause must be sent back for retrial, we will say that he have read the evidence, and the same, as presented

in this record, does not establish the truth of the publication first mentioned herein. On this point there was some evidence, such as given by the witness Byrum and others, relative to information given defendant prior to the publication, which tended to show good faith, that is, that defendant believed the charges true. This would only mitigate. It did not tend to justify. *Wallace v. Kopenbrink,* 31 Okla. 26, 119 Pac. 579. See, also, *Voorhes v. Toney,* 32 Okla. 570, 122 Pac. 552; *Hubbard v. Cowling,* 36 Okla. 603, 129 Pac. 714.

We think because of the errors mentioned the plaintiff is entitled to a new trial, and to accomplish this the cause must be reversed and remanded, with directions to set the judgment aside and grant a new trial.

By the Court: It is so ordered.