CHICAGO, R. I. & P. RY. CO. *et al.* v. MEDLEY *et al.*

No. 4620.    Opinion Filed February 1, 1916.

(155 Pac. 211.)

**LIBEL AND SLANDER—Actionable Words—Service Letter—Master and Servant.** The following service letter, issued by a railroad company to its former employee, upon his discharge: "To Whom It May Concern: This is to certify that Mr. H. N. Medley has been employed at Enid, Oklahoma, on the Chicago, Rock Island & Pacific Railway, as car repairer, from July 25, 1909, to January 17, 1910, when he was discharged for being an agitator and creating trouble in the ranks of our car men at Enid. Services unsatisfactory on this account"—is not libelous per se.

(Syllabus by Dudley, C.)

*Error from Superior Court, Garfield County;*
*Dan Huett, Judge.*

Action by H. N. Medley, against the Chicago, Rock Island & Pacific Railway Company and another. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gamble,* and *K. W. Shartel,* for plaintiffs in error.

*H. G. McKeever* and *Frederick L. Brimi,* for defendant in error.

Opinion by DUDLEY, C. This is an appeal from the superior court of Garfield county. On December 30, 1910, the defendant in error Medley commenced this action in said court against the plaintiffs in error and the defendant in error Taylor to recover damages: (1) For their delaying and failure to issue him a true and proper service letter or clearance card, upon his discharge from the service of the railroad company, and the issuance to

him of a false service letter or clearance card; and (2) for libel for the publication of such false service letter. We shall refer to the parties as they were in the trial court.

The amended petition contains two counts, one for damages for the delaying and failure to issue said service letter and the issuance to him of a false one, and the other for libel for the publication of such false letter. The issues were joined and the case tried to the court and jury, resulting in a judgment in favor of the plaintiff and against the defendants the railroad company and Bassett for the sum of $1,000,. for libel for the publication of said service letter, from which they have appealed.

At the conclusion of the taking of testimony the plaintiff dismissed the action as against Taylor, and the trial court sustained a demurrer to the plaintiff's evidence on the first count, as against the railroad company and Bassett, and withdrew the same from the jury.

The salient facts necessary to be considered to determine the question presented are: Bassett is in the employ of the defendant company, as foreman of its roundhouse at Enid; Taylor is also in its employ, as superintendent of motive power, residing at Shawnee; Medley is a car repairer by trade, and entered the employ of said company as such at Enid, on July 25, 1909; and continued in its employ as such until January 17, 1910, when he was discharged for being an agitator and creating trouble in the ranks of the company's men in Enid. In February, following his discharge, a service letter was prepared by Taylor, showing when plaintiff entered the company's employ, his discharge, and the reasons therefor. This letter was not mailed nor delivered to Medley, but re-

mained in Bassett's office at Enid. It was prepared upon Medley's request; Bassett sent word to Medley that the service letter was ready for him; he, however, did not call for it at that time; he learned, through Osborn, an employee of the company, that the letter had been issued, and, upon inquiry as to what it was, Osborn said to him that it was a "peach," and that he should get it. Later Medley mentioned to Taylor that he was entitled to his service letter, but had not received it. Following this, and on October 13, 1910, Taylor, as superintendent of motive power, issued and mailed to him the following service letter:

"To Whom It May Concern: This is to certify that Mr. N. H. Medley has been employed at Enid, Oklahoma, on the Chicago, Rock Island & Pacific Railway, as car repairer, from July 25, 1909, to January 17, 1910, when he was discharged for being an agitator and creating trouble in the ranks of our car men at Enid. Services unsatisfactory on this account. C. M. Taylor, (L), Supt. Motive Power."

Following the receipt of this letter and on October 24, 1910, Medley wrote Taylor, with reference to the same, requesting an investigation of the truth of the charges therein stated. Thereupon Taylor sent his letter to Embrey, master mechanic of the defendant company, with request that he go to Enid and investigate the charges. Embrey did this, and in the course of his investigation talked with various employees of the company at Enid, who had formerly worked with Medley, with reference to his conduct and demeanor while in the company's employ at Enid. During this investigation some of the employees of the company saw a copy of said service letter. Embrey satisfied himself, as a result of this investigation, that the statements in the service letter

were true and correct, and so advised Medley. Medley and Bassett were members of the Brotherhood of Car Men at Enid; Medley was chairman of the grievance committee, and his duties were to settle controversies between the foreman and employees. He preferred charges against Bassett and others in connection with his discharge. The record is not clear as to what became of these charges.

The essential question presented for determination is whether or not the service letter is libelous *per se.* The language used in the letter is clear and unambiguous; hence it was a question of law for the court to say whether or not the letter was libelous *per se. Bodine v. Times-Journal Pub. Co.,* 26 Okla. 135, 110 Pac. 1096, 31 L. R. A. (N. S.) 147; *Spencer v. Minnick,* 41 Okla. 613, 139 Pac. 130; *McKenney v. Carpenter et al.,* 42 Okla. 410, 141 Pac. 779. This it did, and advised the jury that it was libelous *per se.* The correctness of this instruction is properly presented and challenged here. In determining whether or not the letter is libelous *per se,* the words used therein should be given their plain, natural, popular, and obvious meaning and use. *Hubbard v. Cowling,* 36 Okla. 603, 129 Pac. 714; *Spencer v. Minnick, supra; Smith v. Gillis,* 51 Okla. 134, 151 Pac. 869. Our statute, section 4956, Rev. Laws 1910, defines libel as follows:

"Libel is a false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation. * * *"

We are concerned only with the words, "to injure him in his occupation." Is the letter libelous *per se* within the meaning of this portion of the statute? In

Newell on Libel and Slander (3d Ed.), sec. 174, discussing
this question, it is said:

"Next to imputations which tend to deprive a man
of his life, or liberty, or to exclude him from the com-
forts of society, may be ranked those which affect him in
his office, profession or means of livelihood. To enumer-
ate the different decisions upon this subject would be
tedious, and to reconcile them impossible; yet they seem
to yield a general rule sufficiently simple and unembar-
rassed, namely, that words are actionable which directly
tended to the prejudice of any one in his office, profession,
trade or business."

Discussing this question further, the author, in sec-
tion 175, says:

"It by no means follows that all words to the dis-
paragement of an officer, professional man or trader
will for that reason, without proof of special damage, be
actionable in themselves. Words to be actionable on this
ground must touch the plaintiff in his office, profession or
trade. They must be shown to have been spoken of the
party in relation thereto, and to be such as would preju-
dice him therein. They must impeach either his skill or
knowledge, or his official or professional conduct."

In the case of *Sherman Mach. Co. v. Dun et al.*, 28
Okla. 447, 114 Pac. 617, in construing the foregoing sec-
tion of our statute, it is said:

"The alleged libel does not impute to the plaintiff
any fraud, dishonesty, misconduct, or incapacity in the
management of said business, or in connection therewith,
or in any other relation of life. The fact that a man may
be engaged in business and yet have a limited capital is
neither an imputation against his business reputation, nor
does it in any manner reasonably subject him to public
scandal, scorn, or ridicule. This seems to be the test
as to whether such publication is libelous *per se;* for when
words are uttered falsely of a person in reference to

his profession or business, such as to hold him out to contempt or ridicule, thereby tending to bring him, or his business, into disrepute, such publication may be considered as libelous *per se.*"

The plaintiff, in his petition, ascribes no peculiar or special meaning to the words used in the service letter. Considering them in their plain, natural, popular, and obvious sense, are they libelous *per se*, within the meaning of our statute? We think not. They do not impeach his skill or ability as a car repairer, neither do they impute any fraud, dishonesty, misconduct, or incapacity in his trade. They certainly do not subject him to public hatred, contempt, ridicule, or obloquy, or deprive him of public confidence. Considering the language of this letter, in connection with the facts and circumstances under which it was issued, and the occasion for its issuance, one would infer that the plaintiff was a labor agitator, and as such caused trouble among the company's men, with whom he worked; but, be this as it may, no special meaning is ascribed to the language used, and we are unable to see under what theory this letter could be regarded as libelous *per se*. We have had many agitators in the history of this country—not only labor agitators, but others. In fact, most of the modern legislation, both for the protection of the laboring man and the improvement and betterment of society, has been due largely to agitators. The potential force of labor unions and labor organizations is due to a great extent to labor agitators. We think it would be going too far to hold that the language used in this letter is libelous *per se*.

We have searched in vain for precedents, and the nearest one we find is that of the case of *Wabash Ry.*

*Co. v. Young,* 162 Ind. 102, 69 N. E. 1003, 4 L. R. A. (N. S.) 1091, wherein it was held:

"It is not libelous *per se* to accuse one of being a member of a labor union and a labor agitator."

The facts in this case are similar to the facts in the case at bar, and the rule thus announced is quite applicable. The following authorities support, in principle, the rule we announce: *McKenney v. Carpenter et al., supra; Tennessee Coal, Iron & R. R. Co. v. Kelly,* 163 Ala. 348, 50 South. 1008; *Nichols v. Daily Reporter Co.,* 30 Utah, 74, 83 Pac. 573, 3 L. R. A. (N. S.) 339, 116 Am. St. Rep. 796, 8 Ann. Cas. 841; *Labor Review Pub. Co. v. Galliher,* 153 Ala. 364, 45 South. 188, 15 Ann. Cas. 674. In the case of *Tennessee Coal, Iron & R. R. Co. v. Kelly, supra,* it was said in the syllabus:

"It is not libel *per se* to charge that plaintiff had made trouble at defendant's mines, or that he had run negroes out of their homes; such conduct not necessarily being a crime."

Having reached the conclusion that the service letter is not libelous *per se,* the trial court committed prejudicial error in advising the jury to the contrary.

Said service letter not being libelous *per se,* there can be no recovery, even though it is false, without the allegation and proof of special damages. *Sherman Mach. Co. v. Dun et al., supra; McKenney v. Carpenter et al., supra; Kee v. Armstrong-Byrd & Co., supra.*

The judgment of the trial court should be reversed, and the cause remanded.

By the Court: It is so ordered.