## LINDLEY v. DELMAN.

No. 20977.    Sept. 26, 1933.

Rehearing Denied Nov. 14, 1933.

Wallace & Wallace and L. O. Lytle, for plaintiff in error.

W. H. Odell and Streeter Speakman, for defendant in error.

WELCH, J. In the trial court Mrs. Francis Delman, as plaintiff, instituted this action against Miss Florence Lindley, as defendant, for damages for libel growing out of the circulation of a typewritten instrument purporting to be an anonymous letter. The parties will be referred to as plaintiff and defendant as they appeared in the trial court.

The plaintiff, Mrs. Delman, was employed at Sapulpa as deputy county clerk of Creek county, and the defendant, Miss Lindley, resided in Sapulpa.

The document or instrument upon which this action was predicated is typewritten throughout, and is in words and figures as follows:

"Tulsa, Okla., Oct. 13th, 1928.
"Miss Florence Lindley,
"Sapulpa, Oklahoma.

Dear Madam:

"Knowing that you might be interested in certain information regarding a deputy County Clerk at Sapulpa, Okla., I happened to be an oil man and have considerable holdings in Creek County and my business takes me to Muskogee as well as other towns in the state. While at Muskogee recently I visited an oil company office and while there one of the lease men came and was told by the office man that he should go to Sapulpa at once to check up some acreage in 16-10 and for him to see the little women with the big mouth at the Clerk's office for she would furnish him any information that he might desire for a few drinks of whisky and a couple of dollars. As I was pretty well acquainted with the deputies in the clerk's office I made it a point to find out which one this man referred to and was told by a very reliable republican of Creek County that it was Mrs. Delman and that she had an awful shady reputation having been seen making dates at the St. James Hotel at Sapulpa and on one occasion was seen by the night porter at this place with a large man in her room with very few clothes on. She seems to be a permanent fixture in the clerk's office and is allowed more privileges than all the other clerks together having had a week's vacation at Oklahoma City in May and two weeks in Kansas City and other points in June and also the last week in September at Oklahoma City. She is also allowed to make extra money sometimes running as high as $150.00 per month according to her own statement which was told at a banquet table sometime ago using the county time for same which is strictly against the law.

"I think if you or some other good citizen of Sapulpa would investigate this party you might find out other things about her because I learned from a reliable source that she was unable to get a position in Tulsa and the riff raff of Tulsa should not be allowed to hold a position as responsible as the one held by her.

"I hope you will give this due consideration and see what you can do because it will almost be impossible to elect another republican to the office of County Clerk if this thing continues."

"From a good republican of Tulsa."

The document, although purporting on its face to have been written in Tulsa, was mailed in Sapulpa and addressed to the defendant there.

The defense interposed included a general denial, denial of any malice against plaintiff or her employer, the county clerk, admitted and alleged that defendant received the document through the mails addressed to her, that she circulated the letter among the parties in and about the county headquarters of her political party organization; that she was interested in the affairs of the political party of her choice, and that the only publication or circulation of this matter of which she was guilty was made by her in good faith and upon the belief that it was her duty, and was therefore justified as a privileged publication. The further defense was interposed by specific pleading that the defamatory matter was true in fact. The defendant pleaded specifically that plaintiff did have a shady reputation, that she was guilty of specific acts of immorality, and other acts and conduct of gross impropriety referred to in the document in question.

Upon the trial in the district court the defendant called many witnesses in her effort to prove that the defamatory matter and the specific allegations as to reputation

and as to immorality and misconduct were all true. The trial record is very voluminous, and most of the evidence offered by the defendant was offered for this purpose.

However, none of these defenses prevailed, and the trial resulted in a verdict and judgment for the plaintiff for $7,500. The defendant appealed, and for reversal urges the following propositions:

(1) The letter is not libelous per se.

(2) There is no competent evidence of publication by the defendant.

(3) That plaintiff can recover only if the publication in question be libelous per se.

(4) The letter shows no malice on the part of the defendant toward the plaintiff, and since the letter was not libelous per se, no malice is presumed and the burden of proof rests upon the plaintiff to prove malice under proper pleadings.

(5) The publication, if made by the defendant, was a privileged publication and is true; and if made by the defendant, was made by her in good faith and in a well-founded belief in her duty to make such publication.

(6) Error of the court in giving certain instructions excepted to, and in giving two instructions which were inconsistent.

(7) Failure of the court to instruct on the defendant's theory.

(8) That the verdict and judgment are not sustained by the evidence.

As to the character of the document in question, our statute, section 495, C. O. S. 1921, section 724, O. S. 1931, defines "libel" to be:

"A false or malicious unprivileged publication by writing * * * exposes any person concerning whom it is used to public hatred, contempt, ridicule, or obloquy, or which tends to deprive him of public confidence or to injure him in his occupation. * * *"

The document in question clearly and in unmistakable terms imputes to plaintiff immorality and general depravity. Beyond question it exposes plaintiff to public contempt and ridicule. It constitutes a sharp attack upon her character and reputation as a woman and as a deputy county clerk. It asserts that any information desired from her in her official capacity could be obtained by and through improper and immoral practices. It could have no other tendency than to deprive the plaintiff of public confidence and to injure her in her occupation. The language used in this document throughout is susceptible of but one meaning, and that an opprobrious one. It refers positively to the plaintiff and no other person, and it is clearly libelous per se. Fite v. Oklahoma Publishing Co., 146 Okla. 150, 293 P. 1073; Hargrove v. Okla. Press Publishing Co., 130 Okla. 76, 265 P. 635; Wiley v. Oklahoma Press Pub. Co., 106 Okla. 52, 233 P. 224; Spencer v. Minnick, 41 Okla. 613, 139 P. 130; Demmitt v. McDowell, 60 Okla. 88, 159 P. 290; Dusabek v. Martz, 121 Okla. 241, 249 P. 145; Oklahoma Pub. Co. v. Kendall, 96 Okla. 194, 221 P. 762; 36 C. J. 1180; 36 C. J. 1173; Bratcher v. Gerner, 77 Okla. 12, 185 P. 1081; Higbee v. Owens, 155 Okla. 93, 7 P. (2d) 854.

A reading of these cited cases discloses that this court has had occasion to consider varied kinds and character of defamatory publications, and has found to be libelous per se publications which in no sense could be said to be as sharp and vicious in attack as the document here under consideration. In other words, this court has clearly and consistently held that any false publication by writing concerning another is libelous per se if it exposes such other person to public hatred, contempt, ridicule, or obloquy, or tends to deprive such other person of public confidence or to injure him in his occupation, and this settled rule must be followed in this case.

As to the publication of this document and its contents by the defendant, the general jury verdict in favor of the plaintiff includes a finding that defendant did publish and circulate it. This finding is supported by statements in the defendant's answer to the effect that she took the letter to the county organization of her political party and exhibited it there. And this finding is further supported by evidence showing that the defendant personally exhibited the document to several persons, and that she requested other persons to go to the place where it was available and see and read it. Some of these things were denied by the defendant in her own testimony, but there is ample testimony to sustain the jury finding in this regard, and to establish the fact that the defendant did publish and circulate the document and its contents. The general rule is clearly stated in 17 R. C. L. 315, to be that:

"It is not necessary in matters of libel or slander that the defamation should be made known to the public generally, or even

168

to a considerable number of persons. It is sufficient that it be communicated to only one person other than the person defamed."

Defendant's third and fourth grounds for reversal above set out are founded upon the premise that the document or letter and its contents· are not libelous per se, but since we have found that the letter is beyond question libelous per se, we shall not further discuss these two propositions.

The defendant seeks to justify the publication of this matter upon the theory that it was a privileged publication and is true, and was made by her in good faith and in a well-founded belief in her duty to make such publication. The defendant cites authorities sustaining this proposition as a question of law, but they are not applicable here, because this proposition is not supported in fact in the instant case. The question of the truth of the statements in this document was one of the questions in the trial court, where the defendant sought by testimony to establish this defense. However, this proof was met by testimony offered by the plaintiff of great strength which amply justified the finding of the jury, which is included in the general verdict of the plaintiff, that the defamatory statements concerning the plaintiff were not true, and, since the verdict is so amply sustained by the proof, we must say for the purpose of this determination, as we do say without hesitation from the proof, that the defamatory statements concerning the plaintiff were not true.

The defendant cites authorities to the general effect that when persons are serving a common master or employer, either person may make disclosures to the employer concerning the other under proper circumstances without being made to respond in damages for libel, but such authorities are not applicable here for the reason that plaintiff and defendant were not in any such sense serving any such master or employer.

The defendant was an active worker in behalf of the political party of her choice, and urges that she made this publication in good faith and in a well-founded belief in her duty to make such publication. However, this theory appears to be founded upon the contention that the county clerk of Creek county, for whom the plaintiff was deputy, was at that time, in 1928, a candidate for re-election as county clerk, but an examination of the record discloses that the county clerk was elected in 1926,

for a term of four years, and was throughout the year 1928 continuing to hold office as a portion of the term which began in January, 1927, pursuant to her election in 1926. So that, at the time this matter was published and circulated by the defendant, the plaintiff was not a candidate for office nor was her employer, the county clerk.

The diligence and zeal of the defendant in working for the success of the political party of her choice, and in working as she saw it for the general betterment of governmental affairs, is commendable, but her interest in these matters can constitute no justification for the publication and circulation of such defamatory matter as is contained in the document in question which was established upon trial to be false. There was a sharp conflict in the evidence upon the question whether the publication was made in good faith, or on account of personal malice existing on account of prior transactions and conversations between plaintiff and defendant. This issue was squarely submitted to the jury in the court's instructions, and the general verdict in favor of the plaintiff includes a finding that the publication of the defamatory matter in this case was not, in fact, made in good faith and privileged. This decision does not in any manner affect the rule that the errors of public officials may be commented upon and criticized, nor does it affect the rule that candidates for political office may have the record of their acts and deeds thoroughly investigated by the voters, and by either or any of the political parties of the day. Those rules have no application whatever to the case at bar.

As to the court's instructions to the jury, no good purpose can be served by copying them here in full; the instructions requested by the defendant covered 28 pages of the record, while the instructions given covered 24 pages of the record. The defendant for reversal urges that the instructions given by the court are in some things contradictory, misleading, and uncertain, and do not thoroughly and clearly submit the theory of the defense. A careful reading of the instructions, however, discloses that all matters in issue were thoroughly and clearly submitted to the jury by proper statement of the rules of law applicable thereto. Each of the matters urged and relied upon by defendant in the trial of the cause was submitted to the jury. There is nothing whatever to indicate that the verdict of the jury was or could have been based upon any misunderstanding of the

instructions or any conflict therein. The instructions given to the jury as a whole indicate that the trial court advised the jury at great length, in order that there might be no confusion as to the issues for their determination, and throughout the instructions we do not find error.

The defendant urges that the findings and verdict are not sustained by the evidence. We find from an examination of the record that the defamatory matter contained in the document or letter is libelous per se, and that from the evidence as a whole it is clearly established that the defendant published and circulated the matter, and that it was false. The jury determined that the plaintiff was not entitled to recover actual damages in the sum of $25,000 and $25,000 exemplary or punitive damages, as was prayed for in her petition, but found that she was entitled to recover actual damages in the sum of $7,500. The judgment of the court was based upon this verdict. The verdict and judgment are amply supported by competent evidence, and no error is shown. Many decisions of this court follow the rule that in such cases the judgment must be affirmed. We see no good reason for restating the rule at length, or here reviewing those authorities.

The judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, OSBORN, and BUSBY, JJ., concur. ANDREWS, J., absent. BAYLESS, J., disqualified and not participating.