## HUBBARD v. COWLING.

### No. 2455. Opinion Filed January 7, 1913.

(129 Pac. 714.)

1. **LIBEL AND SLANDER**—Conditional Privilege—"Conditionally Privileged Publication." A "conditionally privileged publication" is a publication made on the occasion which furnishes a prima facie legal excuse for the making of it, and which is privileged, unless some additional fact is shown which so alters the character of the occasion as to prevent it furnishing a legal excuse.

2. **SAME**—"Privileged Communication." A "privileged communication" is one made in good faith, upon any subject-matter in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty, and which contains matter which, without the occasion upon which it is made, would be defamatory and actionable.

3. **SAME**—Privileged Occasion—Question for Court or Jury. Where there is no dispute as to the circumstances under which a publication was made, it is a legal question for the court to determine whether the occasion is such as to bring the alleged defamatory publication within the protection afforded to privileged communications. But whether the facts which give the publication the privileged character claimed for it are established by the evidence is a question for the jury. Accordingly, where the evidence is uncertain and conflicting, it is proper for the court to instruct the jury as to what facts constitute a privilege, and leave them to say whether those facts are proved.

4. **SAME**—Malice—Burden of Proof. After it is shown that the alleged slander is privileged, the burden rests upon the plaintiff to show express malice.

5. **SAME** — Slanderous Communication — Construction of Words. Words used in an alleged slanderous communication are to be taken in their most natural and obvious sense, and in which those to whom they are spoken will be sure to understand them.

(Syllabus by Robertson, C.)

*Error from District Court, Le Flore County;*
*Malcolm E. Rosser, Judge.*

Action by A. F. Cowling against J. P. Hubbard. Judgment for plaintiff, and defendant brings error. Affirmed.

*White & DuBois,* for plaintiff in error.

*Hale & Lundsford, Carl Monk,* and *R. G. Bulgin,* for defendant in error.

Opinion by ROBERTSON, C.  This action was commenced in the district court of Le Flore county on September 6, 1910, by A. F. Cowling to recover damages from J. P. Hubbard for slander.  In the petition it is alleged that defendant, speaking in reference to plaintiff, had said "that A. F. Cowling swore a falsehood in the trial of a civil suit in the justice of the peace court of Cowlington township, Le Flore county, Okla."  It is also charged that this language was used by defendant Hubbard in the Baptist church, while the congregation was in conference, in the town of Cowlington, on July 16, 1910, and that the language used was false, malicious, scandalous, and defamatory.  The defendant answered, first, that the charge was made as alleged, and was true; second, that the charge was made under circumstances of privilege; and, third, that the charge was made without malice.  To this answer plaintiff filed a reply, in form a general denial, and upon the issues so joined trial was had to a jury, and resulted in a verdict for $500 in favor of plaintiff.  Upon this verdict judgment was duly entered, and defendant appeals.

Defendant's admission in his answer that he uttered the words as charged in the petition, and that the same were true, relieves us from further consideration of that phase of the controversy, and leaves us to deal only with the pleas of justification and privilege.

We will first consider the question as to whether or not the communication was privileged.  It is not contended by defendant that the communication was absolutely privileged, but that it was only a qualified or conditional privilege.

What is a qualified, or conditional, privileged communication?

"A conditionally privileged publication is a publication made on the occasion which furnishes a *prima facie* legal excuse for the making of it, and which is privileged unless some additional fact is shown which so alters the character of the occasion as to prevent it furnishing a legal excuse.  *  *  *  The proper mean-

ing of a privileged communication is 'that the occasion on which it was made rebuts the inference arising *prima facie* from a statement prejudicial to the character of the plaintiff, and puts it upon him to prove that it was malice in fact.' " (Townsend on Slander and Libel [4th Ed.] sec. 209.)

Where a communication is made by one having a duty to perform, and it is made in good faith, in the belief that it comes within the discharge of that duty, it is privileged (*Bradley v. Heath*, 12 Pick. [Mass.] 163, 22 Am. Dec. 418; *Rude v. Nass*, 79 Wis. 321, 48 N. W. 555, 24 Am. St. Rep. 717, and note), and the duty here referred to is not limited to legal obligations, but extends to moral or social duties of imperfect obligation (*Pollasky v. Minchener*, 81 Mich. 280, 46 N. W. 5, 9 L. R. A. 102, 21 Am. St. Rep. 516; *Richardson v. Gunby*, 88 Kan. 47, 127 Pac. 533).

"A privileged communication is one made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, and which contains matter which, without the occasion upon which it is made, would be defamatory and actionable." (Newell on Slander and Libel [2d Ed.] 388.)

In this case it is charged, and admitted, that the defendant uttered the alleged slander at a meeting of the Baptist Church, in conference, at Cowlington. The defendant alleges that the charge is true, and was made without malice, and in good faith, by reason of a duty defendant owed the church, and upon a subject in which the church had a corresponding interest. In the light of the above authorities, it is apparent that if the defendant can show that the utterance, which he admits making, was, in fact, made in good faith, and without malice, and upon a subject in which he had an interest, and to the Baptist conference, of which both he and the plaintiff were members, and that the same was made in obedience to a duty which defendant owed the church under its laws and rules, and in which the church had a corresponding interest, the same would become and be a qualifiedly and conditionally privileged communication, and the occasion on which the slander was uttered would rebut the in-

ference of malice *prima facie* arising out of the alleged slander, and would leave the burden of proving malice on the plaintiff.

Defendant insists that the question of privilege as urged in his answer was one of law for the court, and not of fact for the jury, and complains of the instruction given by the court to the jury, which required the jury to determine that question as one of fact. This contention cannot be sustained, and the decisions are practically uniform in holding that, where the evidence is conflicting, it is the province of the court to instruct the jury as to what facts constitute a privileged communication, and leave it for the jury to determine whether or not those facts have been established. Thus in *Abraham et al. v. Baldwin,* 52 Fla. 156, 42 South. 592, 10 L. R. A. (N. S.) 1051, 10 Ann. Cas. 1148, it is said:

"Whether slanderous words uttered are a privileged communication depends upon the circumstances under which they were uttered, and whether or not the facts and circumstances when conceded establish the privilege is a question of law for the court; but, when the facts and circumstances under which the communication was made are not conceded, the court cannot as a matter of law determine whether the communication was or was not privileged, and a jury must determine the facts under proper instructions from the court. * * * In determining whether or not a communication is privileged, the nature of the subject, the right, duty, or interest of the parties in such subject, the time, place, and circumstances of the occasion, and the manner, character, and extent of the communication, should all be considered. When all these facts and circumstances are conceded, a court may decide whether a communication is a privileged one, so as to require the plaintiff to prove express malice. But, when all the essential facts and circumstances are not conceded, the existence or nonexistence of the privilege should be determined by the jury from all the facts and circumstances of the case, under proper instructions of the court applicable to the case."

In 25 Cyc. 549, the following rule is found:

"Where there is no dispute as to the circumstances under which a publication was made, it is a legal question for the court to determine whether the occasion is such as to bring the alleged defamatory publication within the protection afforded to privileged communications. But whether the facts which give the publication the privileged character claimed for it are established

by the evidence is a question for the jury. Accordingly, where the evidence is uncertain and conflicting, it is proper for the court to instruct the jury as to what facts constitute a privilege and leave them to say whether those facts are proved."

See, also, *Bodine v. Times Publishing Co.*, 26 Okla. 135, 110 Pac. 1096, 31 L. R. A. (N. S.) 147. The burden of proving the occasion privileged was also upon Hubbard, the defendant, and it is only when the facts and circumstances are not controverted that the question becomes one of law for the court.

Measured by the above general rules, which seem to be well established, and which, in our opinion, undoubtedly state the law applicable to this case, we are clearly of opinion that the instructions given by the court on the question of privilege are not open to the criticism offered by plaintiff in error. Good faith, a right, duty, or an interest in a proper subject, a proper occasion, and a proper communication to those who have a like right, duty, or interest, are essential to constitute words spoken that are actionable *per se* a privileged communication, so as to make the proof by the plaintiff of express malice essential to liability. *Abraham v. Baldwin, supra.* The burden of proving the allegations of the answer that the communication was privileged was on the defendant, and all of the above essential ingredients were required to determine that issue, which was one of fact and for the jury. This issue was properly submitted to the jury by the court, and defendant has no right to complain of the instructions covering the same, as they fairly and clearly state the rule of law applicable to the facts of the case, and are in conformity with the decisions hereinabove referred to, and to the weight of authority on the subject generally.

The court, after instructing the jury on the question of privileged communications, further instructed them that, if they should find the communication privileged, thereupon the burden of proving that the same was uttered in bad faith, and with malice, etc., would shift, and would rest upon the plaintiff. In other words, the court told the jury that the defendant admitted uttering the words charged, that such utterance *prima facie* constituted slander and "makes the case, unless you shall find in favor of the de-

fendant on one or the other of the issues which he has made";
*i. e.,* that the same was privileged, or that the same was true.
It is urged also in this connection that to charge a man with
swearing to a falsehood does not necessarily charge him with
having committed a crime; that, before a crime can be charged,
all the necessary ingredients of the crime must also be charged.
This is not, nor should it be, the law.  If such were true, it
would be an easy matter, indeed, for one to escape punishment
for slander, for a criminal offense, to all intents and purposes,
can easily be charged without alleging all the material ingredients
of the crime.  Defendant says:

"But does the language alleged and proven charge a crime?
It is alleged, proven, and admitted that the defendant said the
plaintiff swore a falsehood in a trial in a justice court.  It is not
alleged, not proven, and not admitted that the falsehood com-
plained of was perjury.  It is not shown anywhere that the al-
leged false statement was material to the issue.  It is not al-
leged, proven, nor admitted that the justice court had any juris-
diction to try the cause referred to.  How, then, can it be said
that the defendant charged, or intended to charge, that the plain-
tiff had done something for which he was amenable to the criminal
laws of our state?"  (Defendant's Brief, pages 9, 10.)

This, to our minds, is a far-fetched excuse, and not worthy
of serious consideration, and with such plea we have but little
sympathy.   Section 54, Newell on Slander and Libel, p. 123,
reads as follows:

"It is as a general rule a presumption of law that whatever
a witness has sworn to in a judicial proceeding is material to the
question or questions involved, and, when he is charged with
having sworn falsely in such proceeding, the charge imports
perjury.   The injury done consists in the fact that the defendant
has ostensibly charged the plaintiff with the crime of perjury.
The hearers so understand it, and they cannot be presumed to
know anything of what actually transpired in the proceeding to
affect the materiality of the plaintiff's testimony or to qualify
the real nature of the falsehood imputed.   No hearer can pre-
sume that he had been telling an idle story, having no connection
with the cause, for no court would listen to such a story; and
therefore the charge must be interpreted as one of perjury."

The true rule, as we understand it, is that the words used in

the alleged slanderous communication are to be taken in their most natural and obvious sense, and in which those to whom they are spoken, will be sure to understand them. Thus in section 27, Newell on Slander and Libel, p. 304, it is said:

"The courts no longer strain to find an innocent meaning for words *prima facie* defamatory; neither will they put a forced construction on words which may fairly be deemed harmless. Formerly it was the practice to say that words were to be taken in the more lenient sense, but that doctrine is now exploded. They are not to be taken in the more lenient or more severe sense, but in the sense which fairly belongs to them. The rule which once prevailed, that words are to be understood *in mitiori sensu*, has been long ago superseded; and words are now construed by the courts, as they always ought to have been, in the plain and popular sense in which the rest of the world naturally understand them. Now the only question for the judge or the court is whether the words are capable of the defamatory meaning attributed to them. If they are, then it is for the jury to decide what is in fact the true construction. So long as the words complained of are not absolutely unintelligible, a jury will judge of the meaning as well as other readers or hearers. All perplexity and obscurity will disappear under the narrow examination which the words will receive in a court of law. It matters not whether the defamatory words be in English or in any other language, whether they be spelt correctly or incorrectly, whether the phrase be grammatical or not, whether cant or slang terms be employed, or the most refined and elegant diction. The insinuation may be indirect, and the allusion obscure; it may be put as a question or as an *'on dit'*; the language may be ironical, figurative, or allegorical—still, if there be a meaning in the words at all, the court will find it out, even though it be disguised in a riddle or in hieroglyphics. In all cases of ambiguity it is purely a question for the jury to decide what meaning the words would convey to persons of ordinary intelligence."

See, also, pages 302, 303, 304, and 305, Newell on Slander and Libel; *Callahan v. Ingram,* 122 Mo. 355, 26 S. W. 1020, 43 Am. St. Rep. 583; *Wolbrecht v. Baumgarten,* 26 Ill. 291; *Whitsel v. Lennen,* 13 Ind. 535; *Niven v. Nunn,* 13 Johns. (N. Y.) 48; *Smith v. Wright,* 55 Ga. 218.

In the earlier reported cases the rule was otherwise, and great particularity in the pleadings and proof was required, but

modern authorities have trimmed and adjusted the law on this subject, and words and slanderous statements are now taken in their natural sense, and as the hearer understands them, and it ought not be, nor is it, the duty of courts to give defamatory words and expressions a sense and meaning not intended by the utterer. Juries, under proper instructions by the court, are best qualified to determine the true meaning and import of the words used, and they will ordinarily give to the language its real meaning, as it was intended, under the peculiar facts and circumstances of each case.

It is also under this objection and in this connection contended that there was no proof of express malice, and that a verdict should have been directed for defendant. Even were this true, defendant would not be entitled to such relief, for malice, sufficient to sustain a verdict, may be inferred from the facts and circumstances of the case. But there is ample proof of express malice in this case to warrant and sustain the verdict. The record shows that defendant conversed with several persons relative to the charges before presenting them to the conference. It is shown that the pastor of the church advised him on the subject. It is also shown that he ignored the plain letter of the church law, under which he pretended to act, and which he claims impelled him to make the charge, and carried the subject of their differences to the church before going privately to the plaintiff with his grievance as the church law directs. The evidence further shows that a committee was appointed by the church to wait upon the parties, and endeavor to settle their differences; that the committee, in effect, fully exonerated plaintiff, but recommended in their report to the church, that the brethren do not go to law about the matter; that defendant was very active in the matter, and that many of the members who were kinsmen of defendant were also very active, and that, because plaintiff failed to obey the recommendation with reference to keeping their trouble out of law, he was, without notice, unceremoniously expelled from membership in the church, at an almost secret meeting, when there were but twenty or thirty members present out of a membership of 213, and notwithstanding plain-

tiff lived only about 100 yards from the church. These, with many other acts detailed in evidence, together with a personal view of the witnesses, with full opportunity to observe their appearance and demeanor, gave to the jury ample grounds to believe that the charge was made by defendant in bad faith, without reason, and that the same was malicious. There is plenty of evidence in this record to warrant the jury in returning the verdict found, and the rule of this court that, where there is any evidence tending reasonably to sustain the verdict, the same will not be disturbed on appeal, will not permit us to interfere even though we were so disposed.

The other questions raised by the petition in error do not require consideration at our hands, inasmuch as their determination would not in any manner tend to bring us to different conclusions. There being no error apparent of record of sufficient magnitude to warrant an interference with the verdict, the judgment of the district court of Le Flore county should therefore be affirmed.

By the Court: It is so ordered.