## BESHIERS v. ALLEN.

No. 4041.   Opinion Filed April 13, 1915.

Rehearing Denied May 11, 1915.

(148 Pac. 141.)

1.   **LIBEL AND SLANDER—Privileged Words—Statements to Aid Justice.** Words actionable in themselves, because they charge the plaintiff with having committed a felony, spoken to a sheriff while engaged in hunting for the culprits actually guilty of the felony, are qualifiedly privileged if they are spoken in good faith, with an honest belief that they are true, with the sole intent of aiding justice, and with no motive or intent to injure the person spoken of.

2. **LIBEL AND SLANDER—Evidence—Repetition of Charge—Malice—Damages.** In order to show express notice where the scandalous words spoken of the plaintiff were spoken on an occasion of qualified privilege, evidence of a repetition of such charge, made to other persons, both before and after an action is commenced, are admissible for the purpose of showing malice, but not for the purpose of increasing the damages.

3. **LIBEL AND SLANDER—Refusal of Instructions—Evidence.** Where such evidence is admitted, and the defendant requests a special instruction to the jury, that they cannot consider such evidence in arriving at the amount of the damage, and such request is refused, **held** error.

(Syllabus by Devereaux, C.)

*Error from District Court, Bryan County;*

*A. H. Ferguson, Judge.*

Action by Earl Allen against A. C. Beshiers. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

This was an action for slander, tried in the district court of Bryan county, before Hon. A. H. Ferguson, judge. There was a verdict and judgment in favor of the defendant in error (plaintiff below), and the case is brought to this court by proper proceedings in error. For convenience the defendant in error herein will be called plaintiff, and the plaintiff in error defendant, being the positions they occupied in the trial court.

The plaintiff in his petition alleged, in substance:

That he was a citizen of the county of Bryan, Okla., and is, and was at the times mentioned, engaged in the business of civil engineer, and was the county surveyor for Bryan county, and that the defendant is a citizen and resident of Bryan county, Okla.; that on or about the 24th day of May, 1911, at the town of Albany, in the county of Bryan, a certain bank, known as the Albany State Bank, was robbed by persons unknown to the plaintiff, and that subsequent thereto, and on the 25th day of May, 1911, in a certain conversation which the defendant had in the

hearing and presence of one A. S. Hamilton, who was at said time the sheriff of Bryan county, the defendant maliciously spoke and published of and concerning the plaintiff the following slanderous, false, malicious, and defamatory words:

"I can tell you who robbed that bank; it was that surveyor, Earl Allen; I think it was he who robbed that bank on account of what he said to me on yesterday in Kemp; I tell you right now if he did not rob that bank he was closely connected with persons who did rob it and knows all about it. If I was the sheriff of this county I would put him in jail before night."

That this conversation referred to the robbing of the Albany State Bank at Albany, and at the time this conversation was had with the sheriff he was investigating the robbery for the purpose of ascertaining who had robbed the bank. The plaintiff further alleges that on or about the 24th of Maay, 1911, in a conversation that the defendant had with Earl Allen, and in the presence of Earl Allen and J. A. Groves, and in the hearing of other persons, whose names are unknown to the plaintiff, in the town of Kemp, in said county, the defendant maliciously spoke of and concerning the plaintiff the following slanderous, false, malicious, scandalous, and defamatory words:

"If I were the sheriff of Bryan county, I would put you in jail before night for robbing this bank."

The petition, then, in the usual form alleges that these words were maliciously and slanderously spoken of the plaintiff by the defendant, charging him with the commission of a crime, and tending to blacken and injure his honesty, virtue, integrity, morality, and reputation, and to expose him to public contempt and ridicule, and to injure and damage his business, and that the words so spoken were utterly false. The petition further alleges that by the acts of the defendant the plaintiff was permanently injured and damaged in his good name and reputation, and he is exposed to public contempt, and was and is damaged in his business of civil engineer, all of which amounts reasonably to the sum of $10,000.

· The evidence in this case is directly conflicting in a great many respects. The plaintiff's evidence tended to prove that the defendant, who was a stranger to him, met him in the wagon yard at Kemp, and told the plaintiff of the bank being robbed; the information conveyed by the defendant of the robbery of the bank being, according to plaintiff's testimony, the first intimation that he had that the bank had been robbed. On the part of the defendant evidence was offered that the plaintiff, at Kemp, first told the defendant of the robbery of the bank, of which fact the defendant was at that time ignorant, and proceeded to give a description of the man who robbed the bank, and of the horses they rode, and other particulars of the robbery; that the defendant asked the plaintiff how he knew so much about this robbery, and where he got his information, whereupon the plaintiff answered, "At the telephone office," and the defendant asked the plaintiff if he had been to the telephone office, and plaintiff did not say whether he had or not; that at that time the defendant used the words, "I believe you either robbed the bank or you know who did, and if I was the sheriff of Bryan county, I would put you in jail." It will be noticed in the petition that one count sets out that the slanderous words were spoken to the sheriff of Bryan county at a time when the sheriff was investigating the robbery for the purpose of ascertaining who had robbed the bank. The evidence of the sheriff that the defendant had spoken those words to him was allowed to go to the jury over the objection of the defendant, who claimed that the words were privileged, being given to an officer in the discharge of his duty. During the trial the plaintiff was allowed to introduce the testimony of the deputy sheriff of Bryan county, who served the summons in this case on the defendant; that at the time summons was served the defendant told the sheriff, in regard to the charge he had made against the plaintiff of robbing the bank, "I said it, but I seen my way clear when I did say it, that's he is guilty of the robbery." This repetition of the alleged scandal, of course, was not set out in the petition, as the conversation took

place after the action was commenced. The plaintiff was also allowed to introduce testimony that one Walker had a conversation with the defendant in error before the institution of the suit, in which the defendant said that the bank was robbed from the inside, and the man that was riding around with John Groves was known to him, there being evidence on the part of the plaintiff that he was riding with Groves on the day on which the bank was robbed. The court charged the jury on the question of damages:

"You are therefore instructed that, if you believe and find from the evidence in this case that the defendant spoke or published the matters and words alleged in plaintiff's petition, or substantially as alleged in the petition, and that the same were false, and no justifiable motive is shown by the defendant for having made the same, and the same were not privileged, as the court has heretofore instructed, and that the same were spoken or published to some person or persons other than the plaintiff, then it would be your duty to find for the plaintiff. And in determining the amount that the plaintiff is entitled to recover, you may take into consideration what he has been damaged in reputation and humiliation and standing in the community. In no event should your verdict, if for the plaintiff, be for less than the sum of $100, and costs."

The defendant requested the following instructions, which were refused, and exceptions duly saved, and the refusal to give these instructions is one of the assignments of error:

No. 6. "You are further instructed that you cannot consider the evidence of the witness Dickerson in arriving at the amount, if any, the plaintiff is entitled to recover of the defendant, for the reason that the plaintiff does not allege that the making of the said statement to the said witness Dickerson damaged the plaintiff in any sum whatsoever or contributed to such damage."

No. 7. "You are further instructed that you cannot consider the evidence of the witness Walker as to the statement made by the defendant to him, for the reason that the plaintiff does not in his petition allege such as a cause of damage, or that the plaintiff was damaged thereby."

*McPherren & Cochran* and *W. H. Ritchey,* for plaintiff in error.

*C. C. Parker* and *Utterback, Hayes & MacDonald,* for defendant in error.

DEVEREUX, C. (after stating the facts as above). It will be noticed that the petition does not set out the alleged slanderous words spoken to Walker nor those spoken to Dickerson. The words spoken to Dickerson, who was deputy sheriff, were spoken after the suit was commenced. This evidence was admissible because one of the causes of action of the petition showed that the alleged slanderous words were spoken to the sheriff of the county while engaged in hunting for the culprits, and this, without proof of notice would be privileged, and therefore not actionable. While repetition of the words used to the sheriff were privileged at the time he used them, yet the using of such words to other persons prior to the making of the privileged communication is evidence to go to the jury to show malice. In Newell on Slander and Libel (3d Ed.) sec. 499, p. 480, the author says:

The theory of privilege in connection with the law of defamation involves a variety of conditions of some nicety, and also a doctrine not always of easy application to a set of facts; and such being the same in any trial, whether civil or criminal, while the question of libel or not libel, malice or no malice, are matter of fact for a jury, the question of privilege or no privilege where the circumstances under which the communication was made are not disputed is entirely one of law for the judge, but, where such circumstances are in doubt, the jury must find what they were or what the defendant thought they were."

The testimony, threfore, on this qustion, was competent to go to the jury on the question of express malice in the privileged communication made to the sheriff.

The communication made to the sheriff under the facts of this case is a qualified privilege, that is, it is a privilege which

exists only if the defendant made it in good faith, with an honest belief that it was true, and with the sole intent to aid justice, and with no malice toward the plaintiff, or intent to injure him; but the fact that he made the charges to Dickerson and Wallace, all practically the same that he told the sheriff, was evidence to go to the jury to show malice. However, that was the only purpose for which such evidence was admissible, and it could not be considered by the jury for the purpose of enhancing damages. By the sixth and seventh instructions, set out above, the court was expressly requested to charge on this subject, but failed to do so, and this, we think, is error.

In *Bodwell v. Swan,* 3 Pick. (Mass.) 376, the question is discussed as to whether evidence of libelous statements made after the action was commenced was admissible or not, and the court came to the conclusion that it was, but cited with approval the decision of Lord Ellenborough in *Russell v. Macquister,* 1 Campb. 48, note, in which evidence of this kind was admitted, but it was said that the court should charge the jury not to give damages for it.

In 2 Greenleaf on Evidence (15th Ed.) sec. 418 (4), it is said:
"As to the proof of malice or intention: If the words are in themselves actionable, malicious intent in publishing them is an inference of law, and therefore needs no proof, though evidence of express malice may perhaps be shown in proof of damages. But if the circumstances of the speaking and publishing were such as to repel that inference and exclude any liability of the defendant, unless upon proof of actual malice, the plaintiff must furnish such proof. To this end he may give in evidence any language of the defendant, whether oral or written, showing ill will to the plaintiff, and indicative of the temper and disposition with which he made the publication; and this whether such language were used before or after the publication complained of. But if such collateral evidence consists of matters actionable in itself, the jury must be cautioned not to increase the damages on that account."

This is in point in the case at bar. 'In one cause of action, as set out in the petition, the conversation had with the sheriff charging the plaintiff with the crime of robbing the bank was a qualified, privileged communication, and before the plaintiff could recover he must show express malice. This he could do by showing the repetition of the scandalous matter to other persons, both before and after the suit was commenced; but, under the rule laid down by Mr. Greenleaf, although this evidence is admitted, the jury must be cautioned not to increase the damages on that account.

In the case at bar the judge was expressly requested to charge on this subject, but the request was refused, and in his general charge above set out he did not tell the jury for what scandalous language damages may be recovered. It does not require argument to show that the repetition of a scandalous charge to three or four people is more likely to increase the verdict than words spoken to a single person.

The same conclusion was reached by the Supreme Court of Kentucky in *Letton v. Young,* 2 Metc. 562. That was a case somewhat like the present in which other declarations to those set out in the petition were allowed to go to the jury, but the jury were not charged not to consider them in assessing damages, and the court in its opinion say:

"We do not wish to be understood as saying that the failure to admonish the jury as to the effect of the letter at the time of its introduction might not have been cured by an explicit instruction to the same effect at a subsequent stage of the trial, although the warning should have accompanied its admission; but we have no hesitation in saying, that in this case there was no sufficient caution at any time; and, inasmuch as the appellants objected to the letter, and it was only admissible for one purpose, our opinion is that the court erred to their prejudice in not explicitly admonishing the jury at some time before their retirement not to give it any effect whatever in estimating the amount of the damages."

In *Chamberlin v. Vance,* 51 Cal. 75, in an action for slander, words were repeated after the action was commenced, and the court held that they were admissible to prove enmity with which the alleged slander was spoken, citing *Bodwell v. Swan,* 3 Pick. (Mass.) 378. The court, however, go on and say:

"It would, perhaps, have been the duty of the court, had counsel requested it, to charge the jury that no additional damages could be given for the publication of the words spoken after the commencement of the action, as for a publication of a distinct slander, and that they were to be considered only with reference to the motives with which the words declared on were spoken."

In the case under consideration this request was specially made, but refused, and we think that such refusal was reversible error.

There are numerous other assignments of error, but, as the case must be reversed on this ground, it is not necessary to consider them.

We therefore recommend that the judgment below be reversed and the cause remanded for a new trial.

By the Court: It is so ordered.