## GERMAN-AMERICAN INS. CO. v. HUNTLEY et al.

No. 7844—Opinion Filed Dec. 12, 1916.

(161 Pac. 815.)

1. **Libel and Slander—Priviledged Publications—Classification.**

By sec. 4958, Rev. Laws 1910, two classes of privileged publications are recognized: (1) Those where the occasions designated, regardless of malice, constitute an absolute privilege and preclude recovery of damages; and (2) those in which the circumstances of the defamatory publication, together with the testimony, rebut the presumption of malice and afford a qualified privilege.

2. **Same—Statutory Provision—"Fact."**

The word "fact" is used in the fourth paragraph of said section in its ordinary sense to denote the act, the thing done, the circumstance, the publication itself.

3. **Same—Actions—Question for Jury—Privilege.**

Where the circumstances under which the publication was made are undisputed, it is exclusively for the court to determine whether the occasion on which it was made, or the "fact" and the testimony, render it either absolutely or qualifiedly privileged. Otherwise, it is a question of fact to be determined by the jury.

4. **Same—Presumptions—Burden of Proof—Malice.**

In an action for libel, where plaintiff has established that defamatory matter has been published by the defendant concerning him, he is entitled to recover, unless the "fact" (the publication itself) and the testimony rebut the presumption of malice. The burden of adducing evidence to rebut such presumption is upon the defendant.

5. **Same.**

If the fact and the testimony rebut the presumption of malice, the burden then rests upon the plaintiff to show express malice in order to recover.

6. **Corporations—Liabilities—Acts of Officers and Agents—Libel.**

A corporation is liable in an action for libel published by its officers, servants, or agents whenever such publication is made in the performance, or within the scope of the general duties of such officers, servants, or agents.

7. **Appeal and Error—Actions—Instructions.**

Certain instructions examined, and held prejudicially erroneous.

(Syllabus by Bleakmore, C.)

Error from District Court, Grady County; Will Linn, Judge.

Separate actions by W. M. Huntley and C. S. Huntley against the German-American Insurance Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

Scothorn, Rittenhouse & McRill, for plaintiff in error.

Bond, Melton & Melton and Bond & Sandlin, for defendants in error.

Opinion by BLEAKMORE, C. W. M. Huntley and C. S. Huntley commenced separate actions in the district court of Grady county, each seeking recovery of damages against the German-American Insurance Company for libel based upon the publication of a certain letter written by the state agent to a local agent of said company. The issues in the two cases being identical, they were tried together in the court below, where several judgments were rendered against defendant company, each in the sum of $1,000, from which defendant has appealed; and by stipulation the cases are here consolidated for the purpose of review.

The plaintiffs were partners engaged in the mercantile business at Rush Springs, Okla. On March 31, 1914, their stock of goods and fixtures—to insure against the loss of which defendant had issued its policies of insurance—were totally destroyed by fire. Thereafter the loss thus occasioned was adjusted, plaintiffs accepting a less sum than claimed under the provisions of the policies. After such settlement had been effected and payment made by defendant, its state agent wrote to its local agent at Rush Springs the following letter:

"Referring to the loss on the Huntley risk, I beg to state that this matter has now been disposed of on a compromise basis, companies paying $4,500. This loss has been a most disagreeable affair, as there is more than a

reasonable doubt as to the honesty of the assured, and I feel satisfied that both the Huntley brothers know more about the origin of the fire than it is to their interest to admit. The adjustment of this claim was very much complicated by affidavit furnished by you, which so weakened our defense that a compromise was deemed necessary, and I trust that hereafter, should any losses occur, that no action whatever will be taken by you in behalf of the assured unless you are duly authorized to do so. I am very confident that the affidavits secured from you was obtained under a misrepresentation as to existing facts, as I know that you would not knowingly embarrass either the companies or the adjusters. This experience with the Huntley boys is sufficient for us and I must ask that you please refrain from interesting the German-American on any property in which either C. S. Huntley or W. M. Huntley have an ownership, and if at this time we have other policies for these parties, I will ask you to please cancel same on a pro rata basis, returning the surrender contracts to the Chicago office so that our files may be complete. Trusting you will accept this communication in the same spirit as intended, with kindest personal regards, I remain."

The local agent to whom this letter was addressed exhibited it to divers persons. By the petition it is alleged:

"That said letter, containing said false and defamatory matter, was received by said local agent, A. N. Murphy, and by said A. N. Murphy exhibited to various persons in the town of Rush Springs, Okla., where plaintiff and the said C. S. Huntley have resided for a number of years. That by said false and defamatory statements the defendant meant to charge that this plaintiff and the said C. S Huntley had either set fire to their stock of merchandise and fixtures or had it done, and were therefore guilty of arson, a crime under the laws of the state of Oklahoma, and said statements were so understood by these persons to whom said statements and defamatory matter were exhibited, and it was intended by the defendant that the same should be so understood by persons reading said letter."

Defendant answered by way of general denial, and alleged:

"But this defendant specifically denies under oath that A. N. Murphy acted as its local agent or representative in the matter of exhibiting 'to various persons in the town of Rush Springs, Okla.,' said letter referred to in plaintiff's petition herein, if in truth and in fact the said A. N. Murphy did so exhibit said letter; and this defendant specifically denies under oath that the said A. N. Murphy was ever authorized by it to exhibit said letter to any person or persons whomsoever, and specifically denies under oath that the said A. N. Murphy as this defendant's local agent had any such authority, and states the fact to be that said letter was a confidential and privileged communication from this defendant's state agent, James Brundrit, to the said A. N. Murphy, as its local agent, and that as such local agent the said A. N. Murphy had no authority to publish or exhibit the same to any person or persons whomsoever, or in any manner whatsoever, and if he, the said A. N. Murphy, did so act in the premises, such act was not authorized or countenanced by this defendant, and was not within the scope of said A. N. Murphy's authority as this defendant's local agent."

Before the loss was adjusted, investigation in regard thereto had been made by a representative of the state fire marshal, the adjuster for the defendant company, and others, who had reported to the state agent of the company that the fire which destroyed the property of plaintiffs was of incendiary origin, and that the facts and circumstances surrounding it gave rise to suspicion that plaintiffs had burned or caused the burning of such property. The matter had also been investigated by the county attorney in connection with the fire marshal, and evidently it had been determined that the evidence was insufficient to warrant the prosecution of the plaintiffs for arson.

Relative to the letter in question the state agent of defendant, Mr. Brundrit, testified as follows:

"Q. And when you wrote that letter the policy had been settled and paid? A. The loss had. Q. It was a closed transaction? A. Yes, sir; in so far as the insured was concerned. Q. You took the policies up at Oklahoma City? A. Yes, sir. Q. It was a closed transaction so far as the company was concerned? A. Yes, sir; but not as between me and the agent; he had written me two or three letters wanting me to get that thing out of the way, and it was my business—to notify him that it was out of the way. Q. Settled and paid off? A. Yes, sir. Q. In telling him that was it necessary to tell him that the Huntley boys had burned up their store? A. The agent does not like to have policies canceled, and when a policy is canceled it is customary to let him know why, give him our reasons for not wanting to carry the business. Q. Why does the agent want to know? A. Because if he did not know he would probably put us on the risk again. Q. You instruct them to not take a risk, and they go ahead and take it anyway? A. No, but you have to give him instructions. Q. You could instruct him to not put any more risks on the Huntleys without telling him that they had burned up their goods? A. Yes, sir; but it was a good idea to let him know why. Q. You had circulated this report? A. No, sir. Q. You wrote this? A. Yes, sir. Q. You meant it? A. Yes, sir; my opinion. Q. You meant it was not an honest loss, and meant to tell him in that letter that the Huntley boys had burned up their goods? A. From the information I had I wanted him to know that I did not think the claim was an honest one, and that they knew more about the origin of the fire than they

would admit. Q. You meant they burned it or had it burned? A. Yes, that is the opinion. Q. That is the way you wanted the agent to understand it? A. Yes. Q. Do you think it was necessary to say that when you told the agent to cancel the policies? A. That is my reason for canceling it. Q. You did not instruct the agent to exhibit the letter to any one? A. No, sir. * * * Q. I notice in that letter you give the agent a jacking up about making an affidavit? A. Yes, sir. Q. As a matter of fact you were not in very fine humor when you wrote that letter? A. No; I felt better. Q. You felt better after you got that out of your system? A. I don't know. Q. That is true? A. I suppose so. Q. After you got this out of your system you felt relieved? A. I wanted to give the agent instructions about what to do in the future. Q. You wanted to say something and said it to the local agent? A. That is the only one I could say it to. * * * Q. Will you tell the jury what interest the company had in communicating to Mr. Murphy the fact that the company or you believed that the Huntleys burned the stock of goods? A. It was my excuse for canceling the policies. Q. Couldn't you have told him that these policies have proven unsatisfactory, and do not take any more policies on the Huntleys' properties, and if you have any on their property at this time you can cancel them? A. I could have told him that. Q. And it would answer the same purpose and effect as telling him that you believed the Huntleys had burned up their stock of goods? A. He possibly would have written me back to find out the particulars. Q. Then he would have disobeyed your instructions? A. No, sir. Q. He would have canceled the policies? A. Yes, sir; possibly. Q. And would have kept off of the future business? A. Possibly."

The communication is admittedly defamatory. Defendant neither pleaded nor attempted to prove the truth of the criminatory language employed, and does not contend that such communication was absolutely privileged, but relies upon the circumstances of the case as establishing conclusively that the occasion of its publication was one of qualified privilege, and asserts that there was no evidence of actual malice, without which it insists recovery could not properly have been had. In Newell on Libel and Slander (3d Ed.) it is stated:

"Sec. 505. The Subject Classified.—The occasion upon which privileged communications are made may be classified as those absolutely privileged and those in which the privilege is qualified.

"Sec. 506. First. Absolute Privilege.—In this class of cases it is considered in the interest of public welfare that all persons should be allowed to express their sentiments and speak their minds fully and fearlessly upon all questions and subjects; and all actions for words so spoken are absolutely forbidden, even if it be alleged and proved that the words were spoken falsely, knowingly and with express malice. This rule is, however, confined to cases in which the public service or the administration of justice requires complete immunity—for example, words spoken in legislative bodies, in debates, etc.; in reports of military officers on military matters to their superiors; words spoken by a judge on the bench and by witnesses on the stand. In all such cases the privilege afforded by the occasion is in law an absolute bar to any action for defamation. In these cases the plaintiff cannot be heard to say that the defendant did not act under the privilege, that he did not intend honestly to discharge a duty, but maliciously availed himself of the occasion to injure his reputation."

The statute (sec. 4958, Rev. Laws 1910) provides:

"Privileged Communication Defined.—A privileged publication or communication is one made:

"First. In any legislative or judicial proceeding or any other proceeding authorized by law;

"Second. In the proper discharge of an official duty;

"Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized.

"In all cases of publication of matter not privileged under this section, malice shall be presumed from the publication, unless the fact and the testimony rebut the same. No publication which, under this section, would be privileged, shall be punishable as libel."

It seems clear that the legislative intention was to recognize two classes of privileged publications, viz.: (1) Those where the occasions designated, regardless of malice, constitute an absolute excuse and preclude recovery of damages; and (2) those in which the circumstances of the defamatory publication, together with testimony, rebut the presumption of malice, thus affording a conditional excuse.

The first three paragraphs of the foregoing section specifically enumerate those occasions upon which absolute privilege attends a defamatory publication, and in this respect may be said to be exclusive. The fourth paragraph, however, is general in terms, comprehending "all cases" where the occasion of such a publication is not absolutely privileged, and provides that malice shall be presumed therefrom, unless the fact and the testimony rebut the same. The word "fact"

is obviously therein used in its ordinary sense to denote the act, the thing done, the circumstance, the publication itself. Reasonably construed, the language employed in this paragraph may be said to provide that malice shall be presumed from the publication of defamatory matter on occasions not absolutely privileged, unless the inherent circumstances of such publication and the extrinsic evidence relative thereto rebut such presumption.

In actions for libel and slander the doctrine of qualified privilege has been recognized and established in this jurisdiction by the following cases: Tuohy v. Halsell, 35 Okla. 61, 128 Pac. 126, 43 L. R. A. (N. S.) 323, Ann. Cas. 1916B, 1110; Hubbard v. Cowling, 36 Okla. 603, 129 Pac. 714; Beshiers v. Allen, 46 Okla. 331, 148 Pac. 141, L. R. A. 1915E, 413. While in Tuohy v. Halsell it was held in effect that the publication was absolutely privileged, yet it was said:

"But let this be as it may, the communication or publication was a qualified privilege, as held by the trial court. This privilege 'extends to all communications made bona fide upon a subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty, and to cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation.' 13 Am. & Eng. En. of Law, p. 411. Or, as stated in the syllabus in Thomas S. Harrison v. Edwin Bush, 5 E. & B. (Q. B.) 344: 'A communication made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he had a duty to perform, is privileged, if made to a person having a corresponding interest or duty, although it contain criminatory matter which, without this privilege, would be slanderous and actionable. And this, though the duty be not a legal one, but only a moral or social duty of imperfect obligation.' "

In Hubbard v. Cowling, the rule is stated:

"A 'conditionally privileged publication' is a publication made on the occasion which furnishes a prima facie legal excuse for the making of it, and which is privileged, unless some additional fact is shown which so alters the character of the occasion as to prevent it furnishing a legal excuse. A 'privileged communication' is one made in good faith, upon any subject-matter in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty, and which contains matter which, without the occasion upon which it is made, would be defamatory and actionable."

In Beshiers v. Allen it is held:

"Words actionable in themselves, because they charge the plaintiff with having committed a felony, spoken to a sheriff while engaged in hunting for the culprits actually guilty of the felony, are qualifiedly privileged if they are spoken in good faith, with an honest belief that they are true, with the sole intent of aiding justice, and with no motive or intent to injure the person spoken of."

In Newell on Slander and Libel (3d Ed.) sec. 493, the doctrine of privileged communications is stated as follows:

"The great underlying principle upon which the doctrine of privileged communications rests is public policy. This is more especially the case with absolute privilege, where the interests and the necessities of society require that the time and occasion of the publication or utterance, even though it be both false and malicious, shall protect the defamer from all liability to prosecution for the sake of the public good. It rests upon the same necessity that requires the individual to surrender his personal rights, and to suffer loss for the benefit of the common welfare. Happily for the citizen, this class of privilege is restricted to narrow and well-defined limits. Qualified privilege exists in a much larger number of cases. It extends to all communications made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is a moral or social character of imperfect obligation."

And again it is stated by the same author:

"Sec. 497. A communication, to be so privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or proper cause."

And again:

"Sec. 498. It is a legal defense to an action for defamation, if satisfactorily proven, that the circumstances under which the defamatory words were published were such as to render it right and proper that the defendant should plainly state what he honestly believed to be the plaintiff's character—to speak his mind fully and freely concerning him. Such an occasion is one of qualified privilege and the communication is said to be privileged; and though it may be false, still its publication on such an occasion is excused for the sake of the common convenience and welfare of society at large."

And further:

"Sec. 568. (1) It is often a difficult question to determine in what cases a party is privileged in going of his own accord to the person concerned and giving him information which is not asked for. In one class of cases it is clear that it is not only excusable but it is imperative on a person to do so; and that is where there exists between the parties such a confidential relation as to throw on the party the duty of protecting the interests of the persons concerned.

"Such a relationship exists between husband and wife, father and son, brother and

sister, guardian and ward, master and servant, principal and agent, solicitor and client, partners or intimate friends, wherever any trust or confidence is reposed by the one in the other. It will be the duty of the one to volunteer information to the other, whenever the other could justly reproach him for his silence if he did not volunteer such information."

The common good, and a proper regard for the comity of business associates, such, in the instant case, as officers and agents of a corporation, and in general, demands that in communications between them opinions may be freely expressed, and reasons may be given for any action contemplated or taken in reference to matters in which they are correspondingly or mutually interested, even though such opinion or reason contains criminatory charges against third persons, if such charges are bona fide and believed to be true. But the element of good faith must be present in every instance, to confer upon the publication the privileged quality requisite to rebut the presumption of malice.

Where the circumstances under which the publication was made are undisputed, it is exclusively for the court to determine whether the occasion on which it was made, or the "fact," and the testimony render it absolutely or qualifiedly privileged. In Hubbard v. Cowling, supra, it was held:

"Where there is no dispute as to the circumstances under which a publication was made, it is a legal question for the court to determine whether the occasion is such as to bring the alleged defamatory publication within the protection afforded to privileged communications. But whether the facts * * * claimed for it are established by the evidence is a question for the jury. Accordingly, where the evidence is uncertain and conflicting, it is proper for the court to instruct the jury as to what facts constitute a privilege, and leave them to say whether those facts are proved." Spencer v. Minnick, 41 Okla. 613, 139 Pac. 130; Bodine v. Times-Journal Pub. Co. 26 Okla. 135, 110 Pac. 1096, 31 L. R. A. (N. S.) 147.

Defendant complains of the giving of the following instructions:

"The court further instructs the jury that in order for the plaintiffs to recover in this action it shall be sufficient to prove to your satisfaction that the alleged defamatory matter complained of by plaintiffs was written and published by the German-American Insurance Company, or by their legal authorized agent, of and concerning the plaintiffs, or either of them.

"The court further instructs the jury that if you find and believe from the evidence in this case that on or about the 19th day of August, 1914, the defendant, the German-American Insurance Company, acting through its state agent, James Brundrit, wrote a letter to the defendant's local agent at Rush Springs, Okla., A. N. Murphy, concerning the loss of the plaintiffs, W. M. Huntley and C. S. Huntley, or either of them, and in said letter composed, wrote, and published of and about the plaintiffs, or either of them, the alleged false and defamatory matter set out and alleged in the plaintiffs' petition, and that said A. N. Murphy, as local agent of the defendant company herein, acting within the scope of his authority as such local agent, exhibited to various persons in the town of Rush Springs, Okla., such letter containing such alleged false and defamatory matters as set out in plaintiffs' petition and complained of herein, then the law is for the plaintiffs, and you should so find for such sum as you may find and believe from all the facts and circumstances proven in the case that the plaintiffs, or either of them, have sustained by reason of such alleged false and defamatory matter in their business, if any, reputation, or standing in the community, as would be a fair, just, and reasonable compensation as you may find and believe from the evidence they have sustained, if any; and you are instructed if you find for the plaintiffs, or either of them, then in that event your verdict shall not be for less than $100 and costs in each case wherein you may find for the plaintiffs.

"The court further instructs the jury that in all cases of writing or publishing of false and defamatory matter of and concerning another, the law presumes that the writing and publishing of same was done with malice. Malice, gentlemen of the jury, in its legal sense, means a wrongful act done intentionally, without just cause or excuse. The presumption of malice though, gentlemen, may be overcome or rebutted by the defendant by showing such rumors, facts, and circumstances to exist at or prior to the time of writing the alleged false and defamatory matter complained of was so written or published in good faith, believing at the time that the alleged false and defamatory matter complained of therein were true, or were such as a reasonable and ordinary man, judging from all the facts and circumstances of the case, would believe to be true."

While the general rule in other jurisdictions, in the absence of legislative enactment, is that where the occasion of a publication alone renders it qualifiedly privileged, the burden is upon the plaintiff to show actual malice, in the sense of oblique design, or bad faith, yet in this state, by special statute, it is provided (Rev. Laws 1910, sec. 4959):

"In all civil actions to recover damages for libel or slander, it shall be sufficient to state generally what the defamatory matter was, and that it was published or spoken of the plaintiff, and to allege any general or special damage caused thereby, and the plaintiff to recover shall only be held to proof that the

matter was published or spoken by the defendant concerning the plaintiff. As a defense, * * * the defendant may deny and offer evidence to disprove the charges made, * * * and in addition thereto, that it was published or spoken under such circumstances as to render it a privileged communication."

Thus it would seem that when plaintiff established that the defamatory matter was published by defendant concerning him, he had satisfied the requirements of the statute, and was entitled to recover, unless defendant, in addition to the circumstances of the publication (the fact), offered testimony showing that the criminatory charge was based upon reasonable cause and bona fide believed to be true; for without such testimony the presumption of malice was not rebutted. Notwithstanding the defendant failed to allege in its answer that the criminatory charge which it admitted publishing was made in good faith and believed to be true, yet it was permitted on the trial to adduce evidence of the circumstances surrounding the fire which destroyed the insured property, and of current rumors in regard to plaintiff's connection with such fire, for the purpose of rebutting the presumption of malice, and thus bringing the communication within the protection afforded publications qualifiedly privileged under the rule above announced. Whether such testimony established good faith, in that the charge was bona fide believed to be true, and thus rebutted the presumption of malice, was a question of fact, to be determined by the jury. By virtue of the statutory provisions, supra, the burden of evidence in this regard was upon the defendant. This requirement, it seems to us, provides the natural and logical order of proof in such a case, for otherwise plaintiff would be compelled to anticipate, and to establish his cause of action upon which defendant could rely to show tion, disprove all the facts and circumstances probable cause, bona fide belief in the truth of the charge, proper motive, and the use of the publication for the reason and purpose which alone render it privileged. In Hubbard v. Cowling, supra, it was held that:

"After it is shown that the alleged slander is privileged, the burden rests upon the plaintiff to show express malice."

See Tuohy v. Halsell, supra.

It is undoubtedly the correct rule, where the circumstances and the testimony rebut the presumption of malice, that then the burden is upon the plaintiff to show express malice in order to recover.

The "fact"—i. e., the circumstances of the publication in the instant case—was undisputed, but the good faith of defendant, being controverted, was a question for the jury to determine. If the testimony established that the defamatory matter was bona fide believed to be true from reasonable cause and the occasion was employed from a proper motive, then the publication was privileged, and such privilege afforded a complete defense to plaintiff's cause of action. In Newell on Slander and Libel it is stated:

"Sec. 500. When the court holds the communication to be entitled to the privilege, the jury should be instructed to consider and determine whether or not the defendant used the occasion for the sole purpose which conferred the privilege upon his statement; and if the jury find from the surrounding circumstances, as shown by the evidence, that he did so use it solely for such reason and purpose, the verdict will be for the defendant. But if, on the other hand, they find that he employed the occasion in bad faith, to gratify or to further some indirect or malicious motive, or for some improper reason, the verdict will be for plaintiff. Where the communication is entitled to the privilege, the burden of proof is then upon the plaintiff to show actual malice in the sense of oblique design or bad faith."

The first instruction above quoted entirely ignores the sole controverted question presented by the testimony, viz., whether defendant bona fide believed the charge to be true and used the publication from a proper motive, and in effect directs a verdict for plaintiff upon the admitted fact that the criminatory matter was published by defendant concerning plaintiff.

The second instruction set forth is subject to the same criticism.

The third informs the jury that the presumption of malice may be rebutted, but fails to advise that in the absence of malice (that is, if the publication was made from a proper motive, upon reasonable grounds and with a bona fide belief that the charge contained therein was true), that the same was privileged and constituted a defense.

In neither of the foregoing instructions, nor elsewhere in the charge, did the court submit to the jury the single defense of qualified privilege which was clearly an issue and concerning which the testimony was conflicting. Under the instructions, as a whole, the jury were unauthorized in any event to find a verdict for defendant, but were left to consider only the question of the amount of the recovery.

"The question is not one of a failure or omission by the court properly to charge upon this point, or, in other words, of nondirection. * * * The mistake here, however, is one of

misdirection, in that the court erroneously charged what the issues were, as made by the evidence, which necessarily misled the jury as to what they were to determine." C., R. I. & P. R. Co. v. Pitchford, 44 Okla. 197, 143 Pac. 1146.

In this respect we are of opinion that the instructions of the court were prejudicially erroneous. In Newell on Libel & Slander, sec. 448, it is said:

"But it [a corporation] will be liable to an action for libel published by its servants or agents, whenever such publication comes within the scope of the general duties of such servants or agents, or whenever the corporation has expressly authorized or directed such publication." 25 Cyc. 428.

The state agent of defendant was clearly acting within the scope of his general duties when he wrote the letter in question. The publication thereof was complete when it reached, and its contents were disclosed to, the local agent; and while undue publicity of such communication, if attributable to defendant, might properly have been shown in evidence as a circumstance tending to establish malice, yet if the same was circulated by such agent without authority, or in direct disregard of the confidential relations existing between him and the writer, such conduct on his part would not destroy the privileged quality which might otherwise attend its publication.

It is thought unnecessary to advert to other assignments of error presented by the briefs. The judgment should be reversed, and the cause remanded.

By the Court: It is so ordered.