Rockingham, } No. 3586.
Nov. 6, 1946. }

EDWARD J. HOPLEY *v.* CHRONICLE & GAZETTE PUBLISHING CO. *& a.*

*William H. Sleeper* (by brief and orally), for plaintiff.

*Hughes & Burns* and *Waldron & Boynton* (*Mr. Walter A. Calder-wood* orally), for defendants.

Burque, J. Plaintiff filed a motion to set aside the defendants' verdict because it was against the law and the evidence, and now advances the proposition that "the publication as to Hopley was defamatory, . . . and that nominal damages, at least, should have been awarded the plaintiff." The latter position was not taken at the trial, and the case was properly tried and submitted to the jury on defendants' position that the statements were published pursuant to a conditional privilege (*Slocinski* v. *Radwan*, 83 N. H. 501, and cases cited); that the defendants acted in good faith upon a lawful occasion (*Palmer* v. *Concord*, 48 N. H. 211, 216, 217 and cases cited); and that the statements were true or reasonably believed to be true. (*Palmer* v. *Concord, supra*). No exceptions were taken to the charge; plaintiff therefore takes nothing by his motion to set the verdict aside on the ground it is against the law and the evidence.

December 15, 1944, defendants published the following editorial:

### A Rose By Any Other Name

"Nolo Contendere. Lat. I will not contest it. The name of a plea in a criminal action, having the same legal effect as a plea of guilty, so far as regards all proceedings on the indictment, and on which the defendant may be sentenced. This is as Black's Legal Dictionary defines it.

"We say, in layman's language, that the nolo pleas are used as an easy way out of a nasty situation in order to sidetrack a trial and to prevent all of the facts of the case from becoming public knowledge as they would in case of trial proceedings. Such a plea leaves no doubt as to admission of guilt on the part of the defendant. The acceptance of the plea and the suspension of sentence is up to the Presiding Justice.

"Believing that the general public is entitled to all of the facts

regarding the July 11 primaries, the Herald soon will run, as a series, pertinent quotations from the sworn depositions made by city officials involved in the so-called 'open check list' political fiasco.

"Additional illuminating evidence will be brought to the attention of the public during the trial of the civil action of city clerk Edward J. Hopley versus the Portsmouth Herald and its publishers.

"There is much more to this case than has appeared so far. The general public will get the information to which it is entitled in order that it may assume its just responsibilities and just share in 'laying the ghosts' who prowl both by day and by night through the subterranean channels of our city's political life."

This was called to the Court's attention at a hearing in Concord December 23, called for the purpose of setting December 27 as the trial date, at which time plaintiff claimed that in view thereof it would be impossible for him to secure a fair trial at the hands of the jurors then sitting. The Court offered plaintiff the opportunity to file another suit, or to amend his declaration so as to embody what plaintiff claimed was a possible other action of libel, and to try both together. The plaintiff did not, as was his right, avail himself of the offer. The Presiding Justice then ruled, without further evidence, that the plaintiff could have a fair trial. This we consider was error. There was no way of telling at that time whether any of the jurors then sitting and who were to hear the case, had read the editorial and whether, if any had, they would be influenced by it. It is difficult for us to conceive that such a situation did not exist.

The editorial specifically refers to the "open check list fiasco" of the "July 11 primary." The record of the hearing to set the verdict aside shows that on December 23 plaintiff produced before the court in addition to the December 15 issue an edition of the Portsmouth Herald published the day before, in which across the top of the first page was an announcement that a number of defendants had been fined for violation of election laws in connection with the July 11 primary. As we understand it, and gather from the record, plaintiff was included among those who had plead "nolo contendere" to this violation and paid costs, the fine being suspended. It is not disputed that the reference in the December 15 editorial to the nolo pleas was directed to this article of the day before. Articles of this kind are not published without any intention of their being read. They are in fact read and they become the subject of general conversation and comment accompanied with wide publicity. We repeat therefore that it is inconceivable that some of the jurors, at least those from Ports-

mouth and the surrounding towns where the newspaper was circulated were unaware of these publications.

The Court's attention having been called to the situation, it was his duty to ascertain what knowledge, if any, the jurors may have had of these publications, and what effect it would have, if any, on their exercise of impartial consideration of the case. It might well be that in view of these publications plaintiff could not have secured a fair trial at the hands of a panel of jurors in Rockingham County and that a change of venue would have been required. Whatever the result the duty rested upon the Court to insure a fair trial. Nothing was done in this respect. We feel that in an instance of this kind whatever doubt may exist as to whether plaintiff did have a fair trial must be resolved in favor of the plaintiff, and a new trial ordered.

Defendants may not complain of such a result. They brought it on themselves. The second editorial is obviously an attempt to establish a defense in advance of trial and is to be condemned.

*New trial.*

All concurred.