2006 OK CIV APP 79

**Todd TRICE, Plaintiff/Appellant,**

v.

**Jeff L. BURRESS and Wesley United Methodist Church of Shawnee, Defendants/Appellees,**

**The United Methodist Church—Oklahoma Area, Defendant.**

**No. 102,332.**

Court of Civil Appeals of Oklahoma, Division No. 1.

April 14, 2006.

Certiorari Denied June 19, 2006.

---

1254

Michael E. Grant, Oklahoma City, OK, for Appellant.

Peter T. Van Dyke, Mark Spencer, Amy D. White, McAfee & Taft, Oklahoma City, OK, for Appellees.

Opinion by Larry JOPLIN, Judge.

¶ 1 Plaintiff/Appellant Todd Trice (Plaintiff) seeks review of the trial court's order granting the motion for summary judgment of Defendants/Appellees Jeff L. Burress and Wesley United Methodist Church of Shawnee (individually, Burress and Wesley, or collectively, Church) on Plaintiff's defamation (slander) claim. In this proceeding, Plaintiff asserts the trial court erred as a matter of both fact and law in so disposing of his claim. Having reviewed the record, the order of the trial court is affirmed.

¶ 2 Burress served as Senior Minister at Wesley. Plaintiff was a member of the Wesley congregation and Wesley employed him as Youth Director. On or about August 21, 2002, Wesley's governing board voted to terminate Plaintiff's employment.

¶ 3 On August 21, 2003, Plaintiff filed his petition to commence the instant action. In the petition, Plaintiff alleged that he "was employed as the Youth Director at Wesley until August 21, 2002 when he was terminated for reasons which are not clear to him;" but, that "[s]ubsequent to that time, Burress, acting in his capacity as Senior Minister of Wesley, told persons in the Church and in the community that [Plaintiff] was terminat-

ed from his job because he was questioning his sexuality." Plaintiff asserted Burress' statements constituted slander and claimed actual and punitive damages for defamation.

¶ 4 Church answered, denying the statements were made. Alternatively, Church asserted the statements were true or made on a conditionally privileged occasion.

¶ 5 Church then filed a motion for summary judgment. To the motion, Church attached evidentiary materials showing Plaintiff's continued membership at Wesley after his termination, and the deposition testimony of Lauren Heer, a young member of Wesley, allegedly the *only* person to whom Burress published the "questioning his sexuality" statement some six months after Plaintiff's termination.

¶ 6 In support of its motion, Church asserted, inter alia, that the statement by Burress concerned the internal discipline of an existing member, and that the statement was published by Burress to only one member of the Church, all other publications having been by Plaintiff. So, said Church, it was

shielded from liability by the free-exercise-of-religion clause of the First Amendment to the United States Constitution. *See, Hadnot v. Shaw*, 1992 OK 21, ¶ 26, 826 P.2d 978, 987 [1]; *Guinn v. Church of Christ of Collinsville*, 1989 OK 8, ¶ 21, 775 P.2d 766, 774.[2] Alternatively, Church argued, the alleged statement by Burress to other member(s) of the congregation regarding Plaintiff's termination constituted privileged communication(s) on matters of common interest. See, 50 Am.Jur.2d, Libel and Slander, § 340.[3] See also, Restatement of Laws, Second, Torts 2d, § 596 (1977), comment (e).[4]

¶ 7 Plaintiff responded, objecting to Church's motion for summary judgment. Plaintiff contested the allegation of a single publication by Burress, pointing to the deposition testimony of Ms. Heer which arguably showed the presence of one or two other young members of the congregation at the time Burress made the alleged defamatory statement. Plaintiff also adduced notes from the meeting of Wesley's governing board arguably demonstrating his termination for

1. "The church's jurisdiction exists as a result of the mutual agreement between that body and its member.... That relationship may be severed freely by a member's positive act at any time. Until it is so terminated, the church has authority to prescribe and follow disciplinary ordinances without fear of interference by the state. The First Amendment will protect and shield the religious body from liability for the activities carried on pursuant to the exercise of church discipline. Within the context of ecclesiastical discipline, churches enjoy an absolute privilege from scrutiny by the secular authority."

2. "Under the First Amendment's Free Exercise Clause, Parishioner had the right to consent as a participant in the practices and beliefs of the Church of Christ without fear of governmental interference. As the Church's chosen spiritual leaders, the Elders were responsible for providing guidance to all those who, like the Parishioner, had chosen to follow. Under the Free Exercise Clause the Elders had the right to rely on Parishioner's consensual participation in the congregation when they disciplined her as one who had voluntarily elected to adhere to their doctrinal precepts. Parishioner's willing submission to the Church of Christ's dogma, and the Elders' reliance on that submission, collectively shielded the church's prewithdrawal, religiously-motivated discipline from scrutiny through secular judicature."

3. "It seems apparent that the common interest of members of religious associations is such as to

afford the protection of qualified privilege to communications between them in furtherance of their common purpose or interest. Thus, communications between members of a religious organization concerning the conduct of other members or officers in their capacity as such are qualifiedly privileged. It has been said that a priest and his church have a mutual interest in preserving respect for, and obedience to, ecclesiastical edicts of their governing authority, with a qualified privilege to refute and negate the efforts of anyone publicly challenging its orders and teachings, short of expressly or impliedly charging personal immorality or criminality...." (Footnotes omitted.)

4. "The common interest of members of religious, fraternal, charitable or other non-profit associations, whether incorporated or unincorporated, is recognized as sufficient to support a privilege for communications among themselves concerning the qualifications of the officers and members and their participation in the activities of the society. This is true whether the defamatory matter relates to alleged misconduct of some other member that makes him undesirable for continued membership, or the conduct of a prospective member. So too, the rule is applicable to communications between members and officers of the organization concerning the legitimate conduct of the activities for which it was organized...."

breach of policy and procedure governing the conduct and financing of youth outings, and further argued that Burress' statement did not consequently concern the imposition of discipline for violation of any ecclesiastical doctrine of the Methodist Church. So, said Plaintiff, Burress's statement stood outside First Amendment protections. *Guinn,* 1989 OK 8, ¶ 34, 775 P.2d at 779, fn. 48.

¶ 8 On consideration of the parties' submissions and argument, the trial court granted judgment to Church, finding:

> ... [A]s a matter of law, the alleged statement attributed to Defendants is not slander per se; and ... the alleged statement attributed to Defendant Rev. Jeff Burress was allegedly made to a church member about a terminated staff member, who was also a church member; accordingly, the alleged statement is constitutionally protected. *See Guinn v. Church of Christ of Collinsville,* 1989 OK 8, 775 P.2d 766.

Plaintiff appeals,[5] and the matter stands submitted for accelerated review on the trial court record.[6]

 ¶ 9 "Summary judgment is appropriate only where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Wathor v. Mutual Assur. Adm'rs, Inc.,* 2004 OK 2, ¶ 4, 87 P.3d 559, 561. "As this decision involves purely legal determinations, our standard of review of a trial court's grant of summary judgment is de novo." *Id.* That is, "this Court will examine pleadings and evidentiary materials to determine what facts are material and whether there is substantial controversy as to one material fact," and "[w]e review all inferences and conclusions to be drawn from underlying facts contained in evidentiary materials in a light most favorable to the party opposing the motion." *Sperling v. Marler,* 1998 OK 81, ¶ 3, 963 P.2d

577, 579; *Wathor,* 2004 OK 2, ¶ 4, 87 P.3d at 561. "If substantial controversy as to a material fact exists," or "[i]f the uncontroverted facts support legitimate inferences favoring well-pleaded theory of the party against whom the judgment is sought or if the judgment is contrary to substantive law, the judgment will be reversed." *Sperling,* 1998 OK 81, ¶ 3, 963 P.2d at 579; *Wathor,* 2004 OK 2, ¶ 4, 87 P.3d at 561.

 ¶ 10 "In order to recover for defamation, a private figure must prove (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication." *Mitchell v. Griffin Television, L.L.C.,* 2002 OK CIV APP 115, ¶ 5, 60 P.3d 1058, 1061. "A publication is actionable per se only when the language used is susceptible of but one meaning, and that an opprobrious one." *Krebsbach v. Henley,* 1986 OK 58, ¶ 18, 725 P.2d 852, 856. If the statement "has no overt opprobrious connotations," and "[a]ny defamatory meaning ... come[s] in the form of insinuation from the language," "[t]his places the allegation in the realm of slander per quod," requiring the pleading and proof of special damages. *Krebsbach,* 1986 OK 58, ¶¶ 18, 19, 725 P.2d at 856.

¶ 11 In the present case, Burress denied he ever made the complained-of statement, but Plaintiff presented evidentiary materials demonstrating a publication of the allegedly defamatory statement to at least one parishioner. But, Plaintiff neither plead nor presented evidentiary materials arguably demonstrating actionable special damages to support a claim of defamation *per quod.*[7]

---

5. Plaintiff dismissed his claim against Defendant The United Methodist Church—Oklahoma Area without prejudice.

6. See, Rule 13(h), Rules for District Courts, 12 O.S.2001, Ch. 2, App., and Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S.2001, Ch. 15, App.

7. Assuming the "questioning his sexuality" statement imputes homosexuality, the better reasoned line of authorities treats an accusation of homo-

sexuality as defamatory *per quod,* requiring pleading and proof of special damages. *See, Miskovsky v. Tulsa Tribune Co.,* 1983 OK 73, ¶¶ 21, 33–34, 678 P.2d 242, 248, 249–250. *See also, Wilson v. Harvey,* 164 Ohio App.3d 278, 842 N.E.2d 83 (2005); *Donovan v. Fiumara,* 114 N.C.App. 524, 442 S.E.2d 572 (1994); *Hayes v. Smith,* 832 P.2d 1022 (Colo.App.1991). *And see, McGee v. Gast,* 257 Ga.App. 882, 572 S.E.2d 398 (2002) (Plaintiff's alleged loss of income after he was fired from his paid summer job did not

For purposes of the following discussion only, however, we assume the statement was published and constitutes slander *per se.*

¶ 12 The free-exercise-of-religion clause of the First Amendment to the United States Constitution guarantees a church the right, without fear of judicial interference, to impose on its members discipline for breach of ecclesiastical doctrine so long as the member remains a member of the church. *Guinn,* 1989 OK 8, ¶ 21, 775 P.2d at 774.[8] Consequently, "[t]he First Amendment will protect and shield the religious body from [tort] liability for the activities carried on pursuant to the exercise of church discipline," and "[w]ithin the context of ecclesiastical discipline, churches enjoy an absolute privilege from scrutiny by the secular authority." *Hadnot,* 1992 OK 21, ¶ 26, 826 P.2d at 987; *Guinn,* 1989 OK 8, ¶ 21, 775 P.2d at 774. Only where the imposition of ecclesiastical discipline poses an immediate threat to "the public safety, peace or order" is the mantle of absolute constitutional privilege shed. *Guinn,* 1989 OK 8, ¶¶ 14, 18, 775 P.2d at 770–771, 773.

¶ 13 Plaintiff argued, however, that the First Amendment offered no protection to defamatory statements unrelated to church discipline. In support, Plaintiff pointed to both *Guinn* and *Hadnot* recognizing that, " '[u]nder the banner of the First Amendment provisions on religion, a clergyman may not with impunity defame a person, intentionally inflict serious emotional harm on a parishioner, or commit other torts,' " and that, "[a]t the point when the church-member relationship is severed through an affirmative act either of a parishioner's withdrawal or of excommunication by the ecclesiastical body, ..., the absolute privilege from tort liability no longer attaches." *Guinn,* 1989 OK 8, ¶ 34, 775 P.2d at 779, fn. 48; *Hadnot,* 1992 OK 21, ¶ 32, 826 P.2d at 989. So, said Plaintiff, because Burress's statement came six months after the termination decision and did not accurately convey the governing board's professed reasons for his termination, the First Amendment bar recognized in *Guinn* and *Hadnot* did not apply.

¶ 14 We disagree. The statement of which Plaintiff complained related to the ostensible reason for his termination, conveyed from the pastor to a member of the congregation concerning the conduct of another member. At least one court has specifically held that statements by and between church members "relat[ing] to the Church's reasons and motives for terminating [parishioners'] membership" "require an impermissible inquiry into Church disciplinary matters," and that the First Amendment precludes a member's defamation "claim [which] clearly involves an internal conflict within the Church." *Schoenhals v. Mains,* 504 N.W.2d 233, 236 (Minn.App.1993). We are persuaded that examination of Burress's statement in the present case likewise requires an impermissible inquiry into Church disciplinary matters, barred by the First Amendment.

¶ 15 Even if not absolutely barred by the First Amendment, Church is shielded from tort liability by a conditional or qualified privilege. In addition to the absolute immunity afforded by the First Amendment, a church or other religious organization ordinarily bears no tort liability for statements by or between church officers or members concerning the conduct of other officers or members, because "communications between members of a religious organization concerning the conduct of other members or officers in their capacity as such are qualifiedly privileged" as matters affecting a common interest or purpose. 50 Am.Jur.2d, Libel and Slander, § 340; Restatement of Torts 2d, § 596, comment (e). This is especially so where "the publication is made in response to a request rather than volunteered by the publisher." Restatement of Torts 2d, § 595(2)(a). So, where the alleged

constitute "special damages" in support of claim of defamation *per quod,* where Plaintiff "failed to offer any evidence to show the defendant's words caused his purported damages"); *Zeran v. Diamond Broadcasting, Inc.,* 203 F.3d 714 (10th Cir.(Okla.) 2000) ("Emotional distress is not a form of special damages, and Plaintiff's de min-

imis medical expenses, consisting of one visit to his physician and one prescription drug purchase, are insufficient to support the cause of action for defamation per quod").

8. Footnote 2, supra.

defamatory statements are exchanged by or between members of the congregation during or as result of either a church's decision to employ, retain or terminate a clergyman or lay employee, or a church's review of the performance of a clergyman or lay employee, the conditional privilege shields the church from liability for defamation. *See, e.g., State ex rel. Gaydos v. Blaeuer*, 81 S.W.3d 186 (Mo.App.2002)[9]; *Singleton v. Christ the Servant Evangelical Lutheran Church*, 541 N.W.2d 606 (Minn.App.1996)[10]; *Joiner v. Weeks*, 383 So.2d 101 (La.App.1980)[11]; *Rankin v. Phillippe*, 206 Pa.Super. 27, 211 A.2d 56 (1965)[12]; *Slocinski v. Radwan*, 83 N.H. 501, 144 A. 787 (1929).[13]

¶ 16 In the present case, a member of the congregation asked Burress, the congrega-tion's minister, why Plaintiff had been terminated, or, in other words, requested information concerning Plaintiff's conduct or qualifications for office. The complained-of statement occurred in the course of Burress's response to his parishioner's inquiry, that is, during an exchange between one member of the congregation and another member of the congregation concerning the acts of a third member of the congregation. The uncontroverted evidence thus demonstrates publication of the complained-of statement occurred on a conditionally privileged occasion, and the record contains no evidence even remotely suggesting the destruction of the conditional or qualified privilege by abuse or malice. See, Restatement of Torts 2d, § 599, comment (a)[14]; *Wright*

9. Held: no jurisdiction to entertain former parochial school administrator's defamation action against diocesan bishop, parish rector, and superintendent of diocesan schools, where allegedly defamatory statements were made in context of church officials' decision not to renew administrator's contract on alleged grounds relating to appropriateness of her continued employment as part of church's religious leadership, and/or by, to, and about church members relating to matters within the religious cognizance of the diocese.

10. "The allegedly defamatory statements in this case, all of which the record reflects were communicated at task force meetings or Church council meetings and dealt with Singleton's actions as a pastor, fall within the Church's conditional privilege."

11. "To decide this case we must balance the right of an individual to protect his good name and reputation against the right of a religious organization to conduct its affairs free of civil court scrutiny or intrusion. The balance we strike favors the religious organization since we recognize that a qualified privilege exists which protects the actions of the Board and the statements made by the Board members during the December 10, 1976, meeting."

12. "[I]n the instant case all of the members of the Chester church had a common interest in the controversies that occasioned the appointment of the ecclesiastical commission and its report. As the court below said: 'Thus, the conditional privilege extends to the members of the Third Presbyterian Church, all of whom had a very real interest in the resolution of problems which had involved the handling of the church's affairs. Publication could only have been excessive if it had been made to persons who did not have a common interest, and no such publication was made. [I]t is the duty of the court, not the jury, to rule on the question of conditional privilege, and, by definition, the conditional privilege in this case extended to those in the Third Presbyterian Church. Publication to these members could not have been an abuse of that privilege.' The court properly determined, as a matter of law, that the communication was conditionally privileged."

13. "The idea that the conduct of a minister should be mentioned unfavorably only at church meetings, or before tribunals having authority in the premises, suggests an undesirable departure from the usual course of events.... Individual church members are not accustomed to bring the various items of gossip which may be in circulation about the minister to the attention of the governing boards of the church, nor is it desirable that they should do so.... [I]nstances in which charges are presented and heard by the constituted church authorities evidence the culmination of considerable periods of private discussion amongst the members of the congregations involved. Any rule designed to penalize the formation of public sentiment in such cases by arresting the preliminary sifting of reports through private discussion, free from the taint of malice and for a proper purpose, is without justification and would be foredoomed to practical failure as an attempt to decree that men and women shall not act like human beings."

14. "The unreasonable exercise of the conditional privilege is an abuse of it that defeats the protection otherwise afforded. The privilege may be abused because of the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter; because the defamatory matter is published for some purpose other than that for which the particular privilege is given; because the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular

*v. Haas*, 1978 OK 109, ¶ 8, 586 P.2d 1093, 1097 [15]; *Beshiers v. Allen*, 1915 OK 182, ¶ 0(1), 148 P. 141.[16]

¶ 17 We consequently hold neither Burress nor Wesley bear any liability in tort for defamation, Church enjoying either the First Amendment's absolute protection of ecclesiastical discipline, or the qualified protection of comments on matters of common concern. The trial court did not err in granting judgment to Church. The order of the trial court is therefore AFFIRMED.

BELL, P.J., concurs, and HANSEN, J., concurs in result.

privilege; or because the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged."

**15.** "[A] conditional privilege created at common law is lost through abuse. One such identical abuse is knowing the defamatory matter to be false, or acting in reckless disregard as to its truth or falsity."

**16.** "Words actionable in themselves . . . are qualifiedly privileges if they are spoken in good faith, with honest belief they are true, with the sole intent of aiding justice, and with no motive or intent to injure the person spoken of."